LARRY GUNTER AND OREN SHIDLER *v.* STATE OF INDIANA.

[No. 1069S248. Filed December 8, 1971.]

*John M. Lyons, Lyons, Aungst & Guastella,* of Valparaiso, for appellants.

*Theodore L. Sendak,* Attorney General, *Robert F. Hassett,* Deputy Attorney General, for appellee.

DEBRULER, J.—The appellants, Gunter and Shidler, were convicted in the Pulaski Circuit Court of theft in a joint trial by jury and each was sentenced to a term of imprisonment of not less than one nor more than ten years.

Appellants were charged under I.C. 1971, 35-17-5-3, being Burns § 10-3030(1)(a), (2)(a), with having stolen valuable farm tools and five beagle hound pups from a shed on a farm owned by one Kolish. At trial, the victim, Kolish, was permitted to testify, over objection, that after having discovered the theft he had gone to the residence of the appellant, Shidler, and had there stuck his head inside the garage and seen his five missing beagles. Appellants objected to this testimony on the grounds that it was information obtained by the witness while conducting an unlawful search of the garage in violation of the Fourth Amendment to the United States Constitution and Art. 1, § 11 of the Indiana Constitution, and as such was inadmissible. The trial court overruled the objection.

The events leading up to the search appearing in the record are as follows: On December 23, 1968, the house on the victim's farm burned, however the victim continued to operate the farm, caring for his animals and dogs, and maintaining his tools and equipment in a shed. On December 28, 1968, the victim left his farm at 9:00 p.m., and returned the next morning at 9:30 a.m. to do chores. Upon returning, he discovered that two welders, some tools, a five gallon can of Farm Bureau oil, and five hounds were missing from the shed. A light snow

had fallen during the night, and he noticed tire tracks in the snow in the driveway which he described as coming from a vehicle with suburbanite tires in the rear and straight treads on the front. The victim followed these tire tracks three miles up the road and into a driveway of the residence of one Frank Lloyd, and there saw a five gallon can of Farm Bureau oil sitting in front of the garage in the snow. He followed the tracks back out of the driveway and for a short distance and then lost the trail; he then drove to town and reported the loss to the sheriff. He and the sheriff drove out to the victim's farm to investigate after which they return to town.

After returning to town the victim and his wife had dinner with his friends, Mr. and Mrs. Bill Jenkins; afterwhich the four of them set out together to find the car which had left the tracks and to find the stolen property. They first drove to the town of Toto and asked some dog dealers if they had seen his five pups.

The victim Kolish knew that Frank Lloyd had a close friend, the appellant, Shidler. The four decided to drive to Shidler's residence and talk to him and find out if he knew anything about the theft and where the stolen articles might be. Upon arrival at the Shidler residence the victim knocked on the door and found out that no one was at home. He then saw tracks in the driveway which resembled the tracks he had followed earlier in the day. The car had backed up to the garage doors and then pulled away. The victim went to the garage, opened a garage door, stuck his head in and saw his five beagle hounds. The victim then left and reported what he had seen to the sheriff.

Appellants admit that there is no basis upon which to claim that the victim Kolish was acting as an agent of the sheriff or was acting under the sheriff's direction or supervision in making this search. The evidence is that it was his own idea.

Appellants contend that it was error for the trial court to permit the victim to testify at the trial that he had seen his

dogs in Shidler's garage, since this evidence, in their view, resulted from an illegal search by the victim, in violation of the Fourth Amendment to the United States Constitution and Art. 1, § 11 of the Indiana Constitution.

Appellants first contend that the search by Kolish was in violation of his right to privacy afforded by Art. 1, § 11 of our Indiana State Constitution. That provision is as follows:

> "The right of the people to be secure, in their persons, houses, papers and effects, against unreasonable search or seizure shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the thing or person to be seized."

Appellants urge that we should interpret this constitutional provision so as to prohibit the search made by Kolish. They also contend that the State exclusionary rule should operate here so as to render the subsequent testimony of Kolish as to what he saw during the search inadmissible. *Flum* v. *State* (1923), 193 Ind. 585, 141 N. E. 353; *Callender* v. *State* (1922), 193 Ind. 91, 138 N. E. 817.

Whether or not the search would have been valid if conducted by a police officer, we do not believe the search by Kolish to be unconstitutional. This was a search by a private citizen who was the victim of the crime and who was acting without the supervision or knowledge of the police. Kolish made only a minor intrusion into appellant's garage while in the process of trying to recover his property within a short time of the theft. We are not persuaded by appellants' argument that this interpretation will encourage citizens to form into vigilante groups and to set about ferreting out evidence of crime by the use of extreme measures. We know of no such threat to the security of Indiana citizens. None is demonstrated by the conduct of Mr. Kolish who was trying to get his property back, and who, upon locating his dogs, immediately reported it to the police, and assisted in later securing a search warrant from a magistrate.

We wish to make it perfectly clear that we do not intend to alter any existing laws which have created civil claims for damages arising out of attempts to uncover incriminating evidence. We are not concerned here with the existence or nonexistence of any such civil claim.

In considering appellants' Fourth Amendment claim we note again that the Fourth Amendment has in its entirety been made applicable to the states through the due process clause of the Fourteenth Amendment. *Wolf* v. *Colorado* (1949), 338 U. S. 25, 69 S. Ct. 1359, 93 L. Ed. 1782. And after *Wolf, supra,* the federal exclusionary rule fashioned in *Weeks* v. *U. S.* (1914), 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, was made applicable to the states as well. *Mapp* v. *Ohio* (1961), 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081. However, from a determination that the Fourth Amendment and its exclusionary rule applies in Indiana it does not follow that we should suppress the testimony of Mr. Kolish. In order to do that we would first be required to find that a right afforded by the Fourth Amendment was invaded by the search of appellant's garage by Kolish. In discussing the purposes of the Fourth Amendment in *Boyd* v. *U. S.* (1885), 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746, the United States Supreme Court described the abuses of governmental power which caused the prohibition to be made against "unreasonable searches and seizures" to be the widespread use of writs of assistance by revenue officers and general warrants by the secretary of state to search and seize indiscriminately. These abusive practices were utilized by various governmental agents in colonial America and knowledge of their use was common among those who authored the Bill of Rights, and were universally condemned by them as a violation of fundamental rights. Thereafter in 1921, in *Burdeau* v. *McDowell* (1921), 256 U. S. 465, 41 S. Ct. 574, 65 L. Ed. 1048, the United States Supreme Court was faced with the precise issue here presented, namely, whether the Fourth Amendment prohibited searches and seizures by private citizens acting alone and without the complic-

ity of any governmental agencies. In deciding that issue the Court relied heavily on *Boyd* v. *U. S., supra,* and drawing the obvious conclusion from description of abuses of governmental power during the colonial period, resolved the issue in the negative as follows:

> "Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies. . . ." 256 U. S. at 475.

In that case the search and seizure of evidence was made by private citizens. Their conduct itself was criminal and the Supreme Court held in effect the evidence thus seized was admissible. It is clear that a contrary result would have been reached if that search and seizure had been made by police officers or other governmental agents rather than by private citizens. This case has never been overruled. It has been followed many times in federal courts and in other states. *U. S.* v. *McGuire,* 381 F. 2d 306 (2d Cir. 1967); *Barnes* v. *U. S.,* 373 F. 2d 517 (5th Cir. 1967); *Moody* v. *U. S.,* 377 F. 2d 175 (5th Cir. 1960); *Lustig* v. *U. S.* (1949), 338 U. S. 74, 69 S. Ct. 1372, 93 L. Ed. 1819; *U. S.* v. *Chodak,* 68 F. Supp. 455 (D.C. Md. 1946). It has also been followed by this Court. *Guthrie* v. *State* (1970), 254 Ind. 356, 260 N. E. 2d 579; *Machlan* v. *State* (1966), 248 Ind. 218, 225 N. E. 2d 762; *Knotts* v. *State* (1963), 243 Ind. 501, 187 N. E. 2d 571.

Appellants' proposed application of the Fourth Amendment and federal exclusionary rule to the facts of this case, showing as they do that Kolish acting alone and without supervision or knowledge of the police, lacks support in history and authority.

Finally, appellants argue that the search warrant issued in this case was invalid since it was issued upon a false affidavit of probable cause. As a general proposition it is true that a false affidavit would render a search warrant invalid and the fruits of any search made pursuant to

it would be suppressable. *Callender* v. *State, supra; Commonwealth* v. *D'Angelo* (1970), 437 Penn. 331, 263 A. 2d 441. However, here we do not find support for appellants' claim that the affidavit was false. At the trial Kolish testified that the only stolen items he saw at the Shidler residence were the five beagles. In the affidavit for search warrants, Kolish swore that he had "information from his own observation" that the stolen welders and tools were also located at the Shidler residence. Appellants contend that since Kolish admittedly did not *see* the welders and tools at the Shidler residence that he had no "information from his own observation" that they were there. We disagree. Kolish saw part of his stolen items in the garage. This occurred shortly after the theft. He saw them during a quick scan of the interior of the garage. We think that his knowledge that some of the stolen items were there constitutes a sufficient factual basis for his conclusion in the affidavit under oath that all would be found there. The judgment of the trial court is affirmed.

Arterburn, C. J., Givan, Hunter and Prentice, JJ., concur.

NOTE.—Reported in 275 N. E. 2d 810.