JOHN D. TRINKLE; JOSEPH IRBY BROWN v. STATE OF INDIANA.

[No. 671S157. Filed July 20, 1972.]

*Forrest Bowman, Jr.,* of Indianapolis, for appellants.

*Theodore L. Sendak,* Attorney General, *William D. Bucher,* Deputy Attorney General, for appellee.

ARTERBURN, C.J.—Appellants were charged by affidavit with the crimes of theft and conspiracy to commit theft. A motion to quash the affidavits was overruled by the court. Appellants pleaded not guilty and requested a trial by jury. A special judge was appointed at appellants' request. On December 2, 1970, appellants filed motions to waive a jury trial and for suppression of evidence. The motion to suppress was taken under advisement by the court.

Trial commenced on December 3, 1970. On December 7 the motion to suppress was renewed by the appellants which was then overruled as to statements made by appellant Brown and Lockleyer (another defendant below) at the time of their apprehension. The motion to suppress the statements made by defendant Lockleyer to the police was continued under advisement.

The court hearing the evidence without a jury made its finding and ruling on December 10 suppressing all evidence given by appellant Brown to the prosecuting witnesses that was procured by force and stating that the court did not consider such evidence in its finding. The court further suppressed the tape recording made by Lockleyer in the presence of a member of the police department as to appellants Trinkle and Brown, but held the recording admissible as to Lockleyer. As a result the court did not consider such evidence in the determination of the guilt of the two appellants. Lockleyer did not appeal.

The appellants were found guilty of count two, conspiracy to commit a felony and sentenced to the Indiana State Reformatory for a period of not less than two (2) nor more than fourteen (14) years, and were assessed a fine in the amount of twenty-five dollars plus the cost of the action. However, the sentences were suspended and the appellants were placed on two years probation. A motion to correct errors was filed and overruled by the court.

The question presented here by the appellants is not the admissibility of the statements of appellant Brown when he was forced to tell who had sent them for the carpet. It is rather the "poison fruits" or the exploitation of those statements which led the owner of the carpet and his employees to Trinkle's home where they heard Trinkle make the statement at the door when they arrived: "Got the carpet?"

Viewing the facts in this cause most favorable to the judgment of the trial court, we find that on the night of June 7, 1969, appellant John Trinkle, owner of the 92 unit Southgate apartment complex in Bloomington, Indiana, phoned Mr. Randall Byal, an employee of appellant Trinkle. Mr. Byal testified that Trinkle said that some of the boys were going to be getting some carpeting that night and that they were going to get it from the Spring Mill Apartment Complex. The Spring Mill complex was at that time under construction and

only partially completed. Byal interpreted the term "boys" to refer to appellant Brown and defendant below Lockleyer. Byal called Mr. Low Benedict, the manager of Spring Mill and informed him that the carpet lying around the Spring Mill complex might be stolen that night. There were some rolls of new carpeting in the parking lot of the Spring Mill apartments. Following his call from Byal, Benedict phoned Ed O'Hara, owner of Spring Mill, to inform him of what he had heard. O'Hara, the owner and one of his employees, Jim Lichte, went over to Benedict's apartment at Spring Mill.

At approximately 2:30 a.m. a truck pulled up to the Spring Mill complex and two persons began to load the carpeting into the truck. At that time, Benedict, O'Hara and Lichte came out of their apartment and subdued and caught the would-be thieves. Amidst the ensuing altercation, O'Hara, the owner of the carpet, used physical persuasion to force appellant Brown to admit that they had been sent by Trinkle to purloin the carpeting and that they were to take the carpeting to Trinkle's house.

Thereafter, O'Hara, Lichte, Brown and Lockleyer drove the truck to Trinkle's house. Benedict followed in a car. When they arrived at Trinkle's home, Brown and Lockleyer went to the door while O'Hara, Benedict and Lichte waited in the shadows. Trinkle answered the door and asked, "Got the carpet?" Immediately thereafter Trinkle and O'Hara engaged in a verbal battle until Trinkle closed his door and called the police. Benedict also called the police.

On October 21, 1970, over four months later, Lockleyer made a tape recorded oral statement to the police admitting that he and Brown had been sent by Trinkle to steal the carpet. We have no question raised as to the tape recording since the court excluded the evidence in determining the guilt of the two appellants and admitted the evidence only in the consideration of Lockleyer's guilt who does not appeal.

Appellant claims that the statements made by appellant

Brown are inadmissible because they were given under force and therefore, any fruits or benefits emanating from such confession should be inadmissible.

The rules as to admissibility of confessions and benefits accruing therefrom have been, for the most part, determined by the United States Supreme Court. These rules laid down by the court have dealt with confessions made to police officers and have been mainly concerned with the voluntariness of the confessions. The rights of the defendant reached its peak in 1966 with the landmark case of *Miranda* v. *Arizona* (1966), 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, when the United States Supreme Court established firm guidelines for the admissibility of confessions given to law enforcement officers. In the instant case, however, the confession was not given to a law enforcement officer and therefore, the *Miranda* requirements were not necessary. The admissibility of the confession to a private individual and the additional evidence gained therefrom are not proscribed thereby.

The requirements of the police officers in protecting certain constitutional rights of suspects are far more rigorous than those of third parties who are confronted by individuals who are engaging in a criminal act. In this case we do not have a confession, but rather technically an admission. The appellant Brown did not confess to his guilt when he was caught in the act red handed, but only gave to Mr. O'Hara information as to where the defendants were instructed to take the goods and who had sent them. Such a statement constitutes an admission. The distinction between confessions and admissions was pointed out in 23 C.J.S., *Criminal Law*, § 816, p. 153, where it stated that:

"To be a confession, a statement of accused must admit every material element of the crime charged against him, and a confession is not shown by an admission of some, but not all, the essential elements of the crime, . . . , or

admission tending to show that another committed the offense charged.

\* \* \*

While it has been broadly stated that the terms 'admission' and 'confession' are interchangeable, the difference between a confession and an admission is that the former, as has been said, is an acknowledgment of guilt while the latter is but an acknowledgment of some fact or circumstance in itself insufficient to constitute an acknowledgment of guilt, and tending only toward the proof of the ultimate fact of guilt." *Id.* at 155.

But this distinction is not important here. In this case we must decide whether the benefits received from the admissions to private individuals may be used as evidence against the defendants.

As to appellants' contention that because this is a conspiracy prosecution the evidence is not admissible, we point out that these statements were made during the overt act of the crime and they were at least admissible as part of the res gestae. Statements or evidence which is unlawfully obtained from one defendant is no bar to its introduction against another person, even a co-defendant. *Wong Sun* v. *United States* (1963), 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441.

In matters of constitutional protection we have held that in certain instances private citizens may act when police officers may not act. *Gunter* v. *State* (1971), 257 Ind. 524, 275 N. E. 2d 810. In the case before us we feel that one protecting his home or property may solicit information from one infringing on his rights in a manner which, if done by a police officer would be disallowed as violating the defendant's constitutional rights. In this case the appellant Brown was caught in the act of theft and the owners in protecting their property made Brown admit who had sent him. One who is confronted on his own property with a crime is entitled to great latitude in protection of his own rights and

property. This is the inherent right to be free from interference in his person and property. We must remember that the victim has rights as well as the accused. While the standard of voluntariness is necessary to prevent police abuse of defendants, the same policy does not exist in circumstances involving private citizens. The factor of control is not present. Where police may lock one up and impose burdens on an accused which necessitate protection, a private citizen, confronted by the villain in his own home lacks the leverage for abuse which the law enforcement officers possess. We, therefore, find the admission and the benefits accumulated therefrom admissible against the appellants.

Appellants further claim that they did not receive a fair trial because of the court's delay in ruling on the motion to suppress until the conclusion of the trial. We are not concerned here with defendant Lockleyer since he did not appeal. We are only concerned with the admissions made by Brown at the scene of the crime when he was caught and subdued and when he told the owner and his employees that he was getting the carpet for the co-appellant Trinkle. As to Brown, we feel the evidence is so patent and his guilt so evident that no harmful error occurred when the court suppressed his admission but permitted the statement of Trinkle at the door of his home to be admitted. As to appellant Trinkle, he can not complain of the statements made by co-appellant Brown, who said he had been sent by Trinkle to steal the carpet. Nor may Trinkle complain to statements made by Brown at the time of the attempted commission of the crime since in our opinion the admissions made by Brown even though given under duress and fear, inflicted by a private individual, would still be admissible for the reasons previously stated. This being a trial before the court without a jury, we must assume the trial court properly considered only admissible evidence, all of which appears to us from the record to be admissible.

Judgment of the trial court is affirmed.

Givan, Hunter, JJ., concur; DeBruler, J., concurring in result with opinion; Prentice, J., concurs in DeBruler, J.'s concurring opinion.

OPINION CONCURRING IN RESULT

DEBRULER, J.—I agree with the disposition of this case by the majority but am unable to agree with the analysis of the law contained therein. In holding that confessions or admissions choked out of an accused by a private citizen are admissible because not obtained by the action of a State official, the majority confounds the recent adoption of constitutional exclusionary rules as formulated in *Miranda* v. *Arizona* (1966), 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, with the long standing common law rule against the introduction of involuntary confessions. In doing so, the majority ignores both statutory and case law to the effect that coerced confessions are inadmissible regardless of the source of the coercion. I.C. 1971, 35-1-31-5, being Burns § 9-1607; *Roddy* v. *State* (1970), 254 Ind. 50, 257 N. E. 2d 816; *Leaver* v. *State* (1968), 250 Ind. 523, 237 N. E. 2d 368; *Thurman* v. *State* (1907), 169 Ind. 240, 82 N. E. 64; *Schaumberg* v. *State* (1967), 83 Nev. 372, 432 P. 2d 500 (cited in *Leaver, supra*); *People* v. *Berve* (1958), 51 C. 2d 286, 332 P. 2d 97; *Moore* v. *Dempsey* (1923), 261 U.S. 86, 43 S. Ct. 265; *Rochin* v. *California* (1952), 342 U.S. 165, 72 S. Ct. 205, 96 L. Ed. 2d 183; Wigmore, EVIDENCE, § 833. I believe that the trial court was correct in excluding the statements coerced out of one of the appellants here, and since this objectionable evidence was excluded, no error occurred.

The evidence of what occurred at the home of the appellant was not excludable since the owners of the carpet knew before they apprehended the thieves that they had been sent by Trinkle. Thus that evidence was not tainted as the fruit of the poisonous tree. *Wong Sun* v. *U.S.* (1963), 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441. The crucial evidence in this case

came from the testimony of the witness who placed the two appellants here in the alleged conspiracy, and that testimony, if believed, was sufficient to convict the appellants.

The appellants also argue that they were prejudiced by the fact that their motion to suppress was not ruled upon until the close of the case. As their brief points out, "the defendants have a right to know what evidence they are required to meet before they decide whether or not to testify, and on what areas their testimony will touch." I agree with this position and would reverse on this ground, had the appellants properly objected to the delay. A defendant in a criminal action has the right to know precisely what the status of the evidence against him is at the close of the State's case when he must determine his defense strategy. Forcing the accused to guess at the strength of the case against him at the time that he must decide whether or not to waive his constitutional right against self-incrimination, is to rob him of the ability to make an intelligent waiver of that right. Further, as the United States Supreme Court said in *Harrison* v. *U.S.* (1968), 392 U.S. 219, 88 S. Ct. 2008, 20 L. Ed. 2d 1047, an accused's testimony which is impelled by the introduction of an illegally obtained confession is tainted by the primary illegality and is thus inadmissible. However, the appellants acquiesced in the trial court's decision to keep the motion to suppress under advisement during the presentation of the defense's case, and having taken the stand without objection, they cannot now be heard to complain about this procedure. *Lewis* v. *State* (1969), 252 Ind. 454, 250 N. E. 2d 358.

Prentice, J., concurs.

NOTE.—Reported in 284 N. E. 2d 816.