**Ricky Edmond MURPHY, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 781S182.

Supreme Court of Indiana.

Sept. 16, 1983.

Glenn A. Grampp, Evansville, for appellant; Lopp, Lopp & Grampp, Evansville, of counsel.

Linley E. Pearson, Atty. Gen. of Ind., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted of Burglary, Ind.Code § 35–43–2–1, Theft, Ind.Code § 35–43–4–2, and being an Habitual Offender, Ind.Code § 35–50–2–8 (Burns 1979). He was sentenced to thirty-five (35) years imprisonment. This direct appeal seeks review upon the following issues:

(1) Whether there was a fatal variance between the allegations in the charge of theft, and the evidence introduced on that issue at trial?

(2) Whether the Trial Court erred in denying Defendant's pre-trial motion to suppress in-trial identification testimony and in permitting the witness to identify him at trial.

(3) Whether the trial court erred in admitting evidence obtained pursuant to a search warrant over a motion to suppress that challenged the veracity of the affidavit upon which the warrant had been issued.

(4) Whether the Habitual Offender charge violated Defendant's rights of due process.

(5) Whether the Habitual Offender statute constitutes unconstitutional cruel and unusual treatment.

(6) Whether the guilty verdict was sustained by the evidence.

During the early morning hours of April 4, 1979, Kelly King, an employee of The Trading Post, was awakened by noises coming from the direction of The Post. King lived in a recreational vehicle on the premises of the commercial establishment, and when he looked out his window, he observed two males breaking into a storeroom of the store. During the next thirty minutes, King observed the two men remove a quantity of boxes from the storeroom and load them into a waiting automobile. He recorded the automobile license plate number and notified police of the incident.

\*   \*   \*   \*   \*   \*

ISSUE I

Defendant first contends that the evidence introduced at trial to prove the charge of theft fatally varied from the allegations of theft contained in Count II of the information.

Count II in pertinent part reads:

" \* \* \* did knowingly exert unauthorized control over the property *in the custody of* The Post, Inc., d/b/a The Trading Post, \* \* \* with intent to deprive The Post of the value and use thereof, by taking, possessing, and carrying away said property without the consent of the said The Post, Inc." (emphasis added).

This charge is directed at Defendant's exerting unauthorized control over the property in the custody of The Post, Inc. The variance which Defendant asserts is that the evidence disclosed that the property was taken, not from The Post, Inc., as alleged, but rather from "Southwest Communications," a different entity, which was shown to be the owner of the property. However, Defendant erroneously equates custody to "ownership" or "right to custody." He argues " \* \* \* the ownership of article or right to custody over the article must also be correctly alleged and proved at trial." (Appellant's brief p. 21). It is immaterial that Southwest Communications owned the property and, therefore, had the right to possess it. The Post, Inc. did, in fact, have possession (custody) and Defendant did, without authorization, take property from it. The rights to be examined in determining whether or not a theft has been committed are the rights of the person in possession of the property and the rights of the person who took such possession from him. The relative rights of the possessor and third parties with respect to such property are irrelevant. *Thomas v. State,* (1970) 255 Ind. 131, 134, 263 N.E.2d 158.

Defendant was not misled in the preparation of his defense, nor was he otherwise prejudiced by the alleged "variance." *Montes v. State,* (1975) 263 Ind. 390, 404, 332 N.E.2d 786, 795. He is protected against a subsequent prosecution for the same offense upon conviction, since the information itself is specific as to that entity whose custody of property was a material element of the crime of theft; that it, that the Defendant had no superior possessory

rights over the property listed in the information. There was no fatal variance in this case.

■ Defendant also contends that the trial court erred in denying his motion for a directed verdict inasmuch as the evidence did not disclose a taking of property in the custody of "The Post, Inc." Error, if any, in the denial of such a motion is waived upon the introduction of evidence by the moving party. *Pinkston v. State,* (1975) 163 Ind.App. 633, 325 N.E.2d 497, 499.

## ISSUE II

Defendant contends that the trial court erred in permitting witness Kelly King to make an in-court identification of the defendant at trial, in that it was tainted by an earlier unnecessarily suggestive photographic viewing of the defendant by the witness.

Some hours after witnessing the burglary, King appeared at police headquarters to give a statement of the events that had occurred at The Post. He was either shown photographs of two suspects, who were subsequently charged with the burglary and theft, or such photographs were inadvertently exposed to his view. An earlier trial of the defendant upon the same charges had resulted in a mistrial based upon surprise, following King's testimony concerning such photographic viewing.

Prior to the second trial, Defendant filed a motion to suppress any identification of the defendant by King on the grounds that such identification would be tainted by the suggestive nature of the photographic viewing. The trial court sustained the suppression motion as to testimony concerning such photographic identification but overruled it as to an in-court identification, upon the basis that the witness' view at the time that the crime had been committed was a sufficient basis for it, independent of the tainted photographic viewing.

■ An out-of-court identification conducted in an unnecessarily suggestive manner creates a substantial likelihood of misidentification and must be suppressed to avoid a violation of Defendant's right to due process. *Neil v. Biggers,* (1972) 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401. For this same reason, any in-court identification must be made without reference to, and be made free from the taint of any impermissible prior identification. *Cooper v. State,* (1977) 265 Ind. 700, 359 N.E.2d 532. The factors that a court will weigh in determining the existence of an independent source include the opportunity to observe the defendant at the time of the crime and the ease with which the witness can identify the defendant. *Cooper, supra.*

■ We do not agree with Defendant that the witness' viewing of a photograph of Defendant on the morning after the burglary, so interfered with his recall of the burglary itself as to render the admission of his in-court identification testimony a denial of due process. King testified that he had a close, well-lighted and lengthy view of the two unmasked males, whom he did not know, as they removed the goods from the storeroom during a thirty-minute period of time. This was ample evidence to sustain the trial court's finding that the witness' initial viewing of the defendant during the criminal episode took place under such conditions as to permit a positive, independent identification of Defendant.

## ISSUE III

Defendant next contends that the trial court erred in overruling his Motion to Suppress evidence obtained from a search of Defendant's residence pursuant to a warrant that was in turn based upon an allegedly defective affidavit.

The affidavit for the search warrant stated that witness Kelly King observed the Defendant enter into a commercial building at 6:30 a.m. and "remove various items including a battery charger, tool box, and various boxes marked Kodak." At the suppression hearing, King testified that he had never told the police that the break-in had occurred at 6:30 a.m., nor had he made mention of any "Kodak" boxes.

The affidavit also stated that Peggy Willem, the owner of the car driven by Defendant or co-Defendant at the scene of the burglary, had told police that the defendant had shown items taken from The Post to her following the burglary. At the suppression hearing, Willem denied ever having given such a statement.

The Fourth Amendment demands that a search warrant be issued only upon probable cause supported by oath or affirmation. *Franks v. Delaware,* (1978) 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667. This Court has stated "that a false affidavit would render a search warrant invalid and the fruits of any search made pursuant to it would be suppressable." *Gunter v. State,* (1971) 257 Ind. 524, 529, 275 N.E.2d 810, 813. We must therefore inquire whether there was a factual basis for the affidavit sufficient to authorize the issuance of the warrant.

The testimony of affiant, Evansville Police Officer David Cook, and witness Willem conflicted as to whether she had ever stated to police that Defendant had shown her items from the burglary of The Trading Post. Cook testified that he was told this information by Willem, and the trial court was entitled to believe such testimony over the conflicting testimony of Willem, Defendant's acknowledged friend.

Cook also acknowledged at the suppression hearing that the listing on the affidavit of 6:30 a.m. as the time of the burglary was in error, but that such error was not made knowingly, intentionally, or with reckless disregard for the truth. Neither does it appear that the error was material.

There was no testimony, at the suppression hearing, about the affidavit's mention of "Kodak" boxes. The affidavit referred to other items taken from The Trading Post as containing various electronics equipment, cameras, and tools as indicated by King, Willem, and the owners of The Post. The search warrant permitted the police to "search said premises and said person for fruits and evidence of the crime of Theft and Burglary" and there is no challenge to the language of this warrant. Police found the equipment referred to in the affidavit, with the exception of boxes marked "Kodak," in plain view as they entered Defendant's apartment, and also found similar equipment from The Trading Post on a public street outside of the defendant's apartment.

■ We do not find support for Defendant's claim that the defects in the warrant were such as to void the search warrant. The defendant failed at the suppression hearing to meet his burden of proving, by a preponderance of the evidence, that the errors contained in the affidavit were founded in perjury or reckless disregard or otherwise rendered the affidavit insufficient to establish probable cause. *Franks v. Delaware,* (1978) 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667. *Gunter v. State,* (1971) 257 Ind. 524, 275 N.E.2d 810. There remained sufficient content in the affidavit to support a finding of probable cause, and the errors noted in the affidavit were not such as would render the warrant invalid.

### ISSUES IV & V

The first trial of the defendant was upon the burglary and theft counts only and commenced on August 6th. Following examination of the first of the State's witnesses and upon Defendant's motion, the court declared a mistrial by reason of the employment of improper identification procedures that tainted the trial. On August 7th, the State filed Count III which charged Defendant as an habitual offender. Defendant moved to dismiss this count upon the grounds that it was motivated by prosecutorial vindictiveness which violated his constitutional rights to due process and that Ind. Code § 35–50–2–8 (Burns 1979) violates the United States Constitution's Eighth Amendment proscription against the imposition of cruel and unusual punishment. In view of our action upon the first claim, we need not address the second.

Defendant argues that the Prosecutor's filing of the habitual offender charge was a direct, vindictive response to the abortion of his first trial. He bases his argument, in part, upon the testimony of a number of

witnesses at trial, which testimony discloses that the Prosecutor had been aware of Defendant's criminal record and that he had spoken about Defendant to the witnesses in a derogatory manner. The record also discloses that the Prosecutor had been aware of Defendant's prior conviction but had not obtained all of the documents necessary to prove an habitual offender charge and consequently had made the tactical decision to try the burglary and theft charges on the date scheduled, when all the witnesses would be present, rather than to seek a continuance.

Although this record would probably withstand a challenge to the sufficiency of the evidence of vindictiveness, the light in which our Court of Appeals, Third District, reviewed *State v. Selva,* (1983) Ind.App., 444 N.E.2d 329, 331, a proper ruling does not hinge upon the weight of the evidence. In that case, it was held that the appellant was not entitled to a "presumption of vindictiveness" upon the filing of six additional charges after he had declined to plead guilty and had asked for a jury trial, although the trial court's dismissal of the additional charges was upheld. Selva's case was still in the pre-trial stage when he took the action that gave rise to retaliation; whereas this cause had gone beyond that point when charges may normally be expected to be filed or amended. Defendant was in jeopardy. His trial had commenced upon the first two counts when he made the decision that was likely to incite the prosecutor's wrath. His position, therefore is akin to those encountered in *Cherry v. State,* (1981) Ind., 414 N.E.2d 301, *cert. dismissed,* (1981) 453 U.S. 946, 102 S.Ct. 17, 69 L.Ed.2d 1033, and *Blackledge et al. v. Perry,* (1974) 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628.

In the *Blackledge* case, Perry, a North Carolina penitentiary inmate, having become involved in an altercation with another inmate, was charged in the District Court of Northampton County with the misdemeanor of assault with a deadly weapon, was convicted, and was given a 6-month sentence to be served upon completion of his current prison term. On his filing notice of appeal to the Northampton County Superior Court, *in which he was entitled to a trial de novo,* the prosecutor obtained a grand jury indictment charging him with the felony of assault with a deadly weapon with intent to kill inflicting serious bodily injury. The inmate pleaded guilty and was sentenced to a 5-to-7 year term to be served concurrently with his current identical sentence.

The United States District Court granted Perry a writ of habeas corpus, which action was affirmed by the Supreme Court of the United States, following like action by the Court of Appeals, Fourth Circuit.

"Perry's due process arguments are derived substantially from *North Carolina v. Pearce,* 395 US 711, 23 L Ed 2d 656, 89 S Ct 2072, and its progeny. In *Pearce,* the Court considered the constitutional problems presented when, following a successful appeal and reconviction, a criminal defendant was subjected to a greater punishment than that imposed at the first trial. While we concluded that such a harsher sentence was not absolutely precluded by either the Double Jeopardy or Due Process Clause, we emphasized that 'imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal or collateral remedy would be . . . a violation of due process of law.' Id., at 724, 23 L Ed 2d 656. *Because 'vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial,'* . . . .

\*　　\*　　\*　　\*　　\*　　\*

"*The lesson that emerges from Pearce, Colton, and Chaffin is that the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of 'vindictiveness.'* Unlike the circumstances presented by those cases, however, in the situation here the central figure *is not the judge or the jury, but the prosecutor.* The question is whether the opportunities

for vindictiveness in this situation are such as to impel the conclusion that due process of law requires a rule analogous to that of the *Pearce* case. *We conclude that the answer must be in the affirmative.*

"A prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining a trial de novo in the Superior Court, since such an appeal will clearly require increased expenditures of prosecutorial resources before the defendant's conviction becomes final, and may even result in a formerly convicted defendant's going free. And, if the prosecutor has the means readily at hand to discourage such appeals—by 'upping the ante' through a felony indictment whenever a convicted misdemeanant pursues his statutory appellate remedy—the State can insure that only the most hardy defendants will brave the hazards of a de novo trial.

"There is, of course, no evidence that the prosecutor in this case acted in bad faith or maliciously in seeking a felony indictment against Perry. The rationale of our judgment in the *Pearce* case, however, was not grounded upon the proposition that actual retaliatory motivation must inevitably exist. Rather, we emphasized that 'since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.' We think it clear that the same considerations apply here. A person convicted of an offense is entitled to pursue his statutory right to a trial de novo, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration." 417 U.S. 21 at 25–27–28, 94 S.Ct. 2098 at 2101–02–03, 40 L.Ed.2d 628 at 633–34–35. (Emphasis added). (Citations omitted).

In *Cherry v. State, supra,* a new trial had been ordered by the trial court upon Cherry's motion and the State, thereupon, refiled charges that it had previously filed and dismissed and that had arisen from the same criminal episode.

"Defendant was originally charged early in 1978, with three counts arising from the instant crime: Count I, rape, a class A felony; Count II, criminal deviate conduct, a class A felony; and Count III, habitual offender. In May, 1978, defendant moved to sever the counts and this motion was granted. The state indicated it would try defendant only on Counts II and III. A jury trial in June, 1978, resulted in a guilty verdict on Count II and a hung jury on Count III. The trial court found there were aggravating circumstances and sentenced defendant to forty years imprisonment on the criminal deviate conduct. After the sentencing, the state made a motion to dismiss Counts I and III and this motion was granted." 414 N.E.2d 301 at 304.

Thereafter, the trial court granted Cherry's motion to correct errors and ordered a new trial; and over objection, the State refiled the counts previously dismissed upon its motion. We considered Cherry's argument in light of *North Carolina v. Pearce,* (1969) 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 and *Blackledge v. Perry, supra.*

"In analyzing *Blackledge* and *Pearce,* we find it is clear that when the prosecution has occasion to file more numerous or more severe charges for the same basic criminal conduct against an accused *after* the accused has successfully exercised his statutory or constitutional rights to an appeal, the prosecution bears a heavy burden of proving that any increase in the number or severity of the charges was not motivated by a vindictive purpose. There is no question in the instant case of the increased harshness of the penalty for defendant when the state refiled the two additional charges against him. The defendant's interest here is a substantial one considering both the increased sentence which he received and the addition of two felony convictions to

his record." 414 N.E.2d at 305. (italics in original).

The shelter afforded by *Pearce* and *Blackledge* was logically extended to deter prosecutorial vindictiveness following the declaration of a mistrial in *United States v. Jamison, et al.,* (1974) 164 U.S.App.D.C. 300, 309, 505 F.2d 407, 416. In that case, appellants had been successful in obtaining the declaration of a mistrial order during their trial on a charge of first degree murder, and the prosecutor then had them indicted for first degree murder upon the same evidence.

"Although free to reprosecute appellants after their first trial was aborted, the government was not necessarily free to reindict them for a more serious crime than had been originally charged. On the contrary, we have concluded that, under the line of Supreme Court cases which began in 1969 with *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072 [23 L.Ed.2d 656] (1969), the reindictment of defendants for first degree murder, absent any showing of justification for the increase in the degree of the crime initially charged, denied them due process of law." 505 F.2d 407 at 413.

"For a time it was uncertain whether due process required that criminal defendants be shielded as well from the danger of prosecutorial vindictiveness, and specifically from increases in the offense charged. *Chaffin* suggested that prosecutorial vindictiveness was not to be feared, at least insofar as it might bring about an increased sentence through increased sentence recommendation. See *Chaffin v. Stynchcombe, supra* [412 U.S. 17], at 27 n. 13, 93 S.Ct. 1977 [at 1983 n. 13, 36 L.Ed.2d 714]. However, lower courts have generally assumed in the wake of *Pearce* that it did apply to increases in the charged offense, *Sefcheck v. Brewer,* 301 F.Supp. 793 (S.D.Iowa 1969) (*Pearce* prohibits charge increase after withdrawal of guilty plea), though it has on occasion been found either that there was no effective increase in the charged offense, *United States v. Farinas,* 308 F.Supp. 459 (S.D.N.Y.1969) (no

prejudice from division of one count indictment into five counts), or that in particular circumstances the likelihood that such an increase would be motivated by vindictiveness was not sufficient to justify restrictions of the kind imposed by *Pearce. United States ex rel. Williams v. McMann,* 436 U.S. 103 (2d Cir.1970), cert. denied, 402 U.S. 914, 91 S.Ct. 1396, 28 L.Ed.2d 656 (1971) (restoration of original charge after withdrawal of bargained guilty plea "scarcely suggestive of vindictiveness").

"We think the Supreme Court has now settled the question in *Blackledge v. Perry,* * * *." 505 F.2d 407 at 414.

"The question for us, therefore, is whether to differentiate between attacks which defendants make on the fairness of criminal proceedings before and after they are complete. We decline to draw such a distinction, primarily because of its 'implications ... for the sound administration of justice.' *United States v. Tateo, supra,* 377 U.S. [463] at 466, 84 S.Ct. [1587] at 1589 [12 L.Ed.2d 448]. Imposing a ceiling on subsequent indictments after reversals but not after mistrials would discourage defendants from seeking mistrials when error prejudicial to them has occurred, whereas mistrials in such cases may represent a significant saving of judicial resources. At the same time it would encourage prosecutorial efforts to 'overreach' and induce mistrials on defendant's motion in exactly the way that the Supreme Court deplored in *United States v. Tateo, supra,* and *United States v. Jorn* [400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543], *supra.*

"We conclude then that *Pearce* and *Blackledge* require restrictions on increased charges after mistrials. * * *." 505 F.2d 407, 416.

Defendant was initially charged with a "Class C" felony and a "Class D" felony. Assuming maximum enhancement of sentences and an order for consecutive sentences upon a finding of aggravating circumstances, he was subject to imprisonment for a maximum of twelve (12) years when

the grounds for mistrial came to light. Immediately following the grant of Defendant's motion, the State "raised the ante" to a possible sentence for forty (40) years. In the meantime, nothing had occurred except that Defendant had successfully exercised his right to have a fair trial.

■ Under such circumstances, fundamental fairness precludes a requirement that Defendant show vindictive motivation or that the State be permitted to show its absence. Were we to hold otherwise, an accused in Defendant's predicament would be required to elect whether he would submit to a trial had without due process of law or to a trial wherein there was a potential for a much more severe penalty. Our concept of justice simply will not sanction an implicit form of bargaining where the accused must purchase due process of law.

The result we reach is also in complete accord with precedents in other jurisdictions. In *James v. Rodriquez,* (10th Cir. 1977) 553 F.2d 59, the court, treating the mandatory New Mexico Habitual Offender statute, ruled:

"In the case at bar he (the Prosecutor) chose to withhold the filing of it at the time of the first conviction, and it was only after the appeal, reversal and trial resulting in conviction on the charge in the second proceeding that he came forward with the habitual criminal charge. In our opinion what appears to be a tactical filing under the Habitual Criminal Act constitutes an interference with the right of appeal and it is thus a violation of the due process clause of the Fourteenth Amendment." *Id.* at 62.

Similarly, the court in *People v. Ivery,* (1980) 44 Colo.App. 511, 514–15, 615 P.2d 80, 83 reached the same conclusion where Ivery sought post conviction relief to set aside a guilty plea:

"In the instant case, however, we are beyond the pre-trial plea negotiation stage; here defendant is pursuing an avenue of appeal and should not be subjected to pressure of the type used to coerce him into waiving that right. *North Carolina v. Pearce, supra; Blackledge v. Perry,*

*supra.* Thus, there is no merit to the People's argument that the threat of enhanced charges in the instant case occurred during plea negotiations. Ivery had entered a plea of guilty to negotiated charges, the plea was accepted, and the trial court entered judgment of conviction thereon. Ivery was sentenced and a mittimus was issued, and, following the expiration of 120 days after sentencing, the judgment of conviction became final. Crim.P. 35(a); *People v. Smith,* 189 Colo. 50, 536 P.2d 820 (1975). Ivery was, and is, pursuing an appeal from a final judgment. Thus, it would be constitutionally impermissible for the People to penalize him for exercising that right by filing habitual criminal charges if he is granted a new trial."

In the case at bar, the State had been unprepared or unable to prove habitual offender status at the time of trial, and it elected to proceed to trial, nevertheless, and to forego its entitlement to seek to extract the enhanced penalty provided for such offenders. It could not, thereafter, rattle the habitual offender charge to coerce Defendant into foregoing his right to a fair trial or wield it thereafter to punish him for not having done so. Reversible error was committed by the trial court in denying Defendant's motion to dismiss the habitual offender count.

## ISSUE VI

Defendant's "sufficiency of the evidence" challenge presumes the improper admission of identification testimony hereinbefore noted. His challenge also notes that Defendant did not own the automobile that was placed at the scene of the burglary, that the car's license plate was traced to witness Peggy Willem, and that she testified that she had not loaned the vehicle to him at the critical time. The issue of improper admission of identification evidence has been hereinbefore determined contrary to Defendant's position, and Willem's testimony above mentioned conflicted with other evidence.

The judgment of the trial court is affirmed as to Counts I and II and reversed as to Count III. The case is remanded to the trial court with instructions to resentence Defendant in a manner consistent with this opinion.

DeBRULER and HUNTER, JJ., concur.

PIVARNIK, J., dissents with opinion in which GIVAN, C.J., concurs.

PIVARNIK, Justice, concurring and dissenting.

I concur in the majority opinion in its affirmance of the trial court as to Counts I and II, but dissent as to its reversal of the trial court on Count III. First, I cannot join the majority in its conclusions on this issue for the same reasons expressed in my dissenting opinion in *Cherry v. State,* (1981) Ind., 414 N.E.2d 301.

Second, as the majority opinion states, the prosecutor had been aware of Defendant's prior conviction but had not obtained all of the necessary documents to prove an habitual offender charge at the time trial started. Rather than seek a continuance, the prosecutor decided to proceed with the burglary and theft charges when all witnesses would be present. The trial was aborted on the very first witness. The record shows here that Count III, suggesting that Defendant was an habitual offender, was filed on August 7, 1979, and amended on August 17, 1979. The trial did not begin until December 15, 1980.

This Court has consistently held that habitual criminal is an enhanced sentencing feature that can be filed by the State at any time providing the defendant has notice with sufficient time to prepare his defense to that issue. *Norris v. State,* (1979) 271 Ind. 568, 394 N.E.2d 144; *Howard v. State,* (1978) 268 Ind. 589, 377 N.E.2d 628. *See also McConnell v. State,* (1982) Ind., 436 N.E.2d 1097, at 1102.

I dissent from the majority opinion and would affirm the trial court on all issues.

GIVAN, C.J., concurs.