**William HUTCHINSON, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 483S136.

Supreme Court of Indiana.

May 9, 1985.

Charles E. Enslen, Highland, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from a conviction of attempted murder, Ind.Code §§ 35–42–1–1 and 35–41–5–1. The case was tried before a jury. Appellant was sentenced to thirty-five years in prison.

Appellant raises eight issues on appeal: (1) whether the trial court erred in admitting State's Exhibit Five; (2) whether trial court erred in admitting State's Exhibit Six; (3) whether trial court erred in ordering him to give a handwriting sample; (4) whether the trial court erred in denying his motion for a directed verdict; (5) whether the evidence is sufficient to support his conviction for attempted murder; (6) whether the trial court erred in allowing the State to read a portion of a letter at the sentencing hearing which indicated that he may have committed prior criminal acts; (7) whether his sentence is supported by adequate findings of aggravating and mitigating circumstances; (8) whether the trial court erred in ordering that the sentence imposed in the present case be served consecutively with a sentence imposed in a prior case.

These are the facts that tend to support the determination of guilt. On February 7, 1981, appellant was incarcerated in the Lake County jail awaiting trial on an armed robbery charge. He was granted permission to attend the funeral of his step-father in East Chicago. Officers Gurebitz and Pozywio escorted him to the funeral. During the service, he was released from the handcuffs and permitted to sit with his family.

After the conclusion of the service, appellant spoke with Roxann Carr in the lobby of the funeral home. Then, Ms. Carr stepped in front of him, and he pointed a gun at Officer Pozywio and told him that if he reached for his gun, he would shoot him. Pozywio ran into the chapel area of the funeral home. Officer Gurebitz observed appellant's hand which held the gun jerk twice; however, the gun did not fire. In response to appellant's action, Gurebitz fired two shots at appellant and wounded

him. As appellant laid on the floor, he told the officers that he would kill them as soon as he could. Thereafter, Pozywio recovered appellant's gun and gave it to Gurebitz. Gurebitz removed a .25 caliber bullet from the gun's chamber.

At trial, the State introduced letters which were written by appellant to Evelyn Cline after the incident. The trial court edited several sections of the letters and allowed them to be read to the jury. The first letter, dated April 7, 1981, read:

Oh, yeah, when you write me, send the letters to this name, Victor Czerekaviczius. If you send it to me in my name, I won't get it, because they tear my letters up. These cops hate me since I supposedly tried to kill two to them. I ask you, Evelyn, would I try to kill anyone? (smile).

The second letter, dated June 9, 1981, read:

I knew these cops were fucking with my mail again. I knew that I should have received a letter from you. The rotten bastards think they're slick. I wish I had a gun in my hand. I'd make the fucking pigs do the funky chicken. I'd pull a Humphrey Bogart on them. "Come and get me, Copper. You'll never take me alive. The only thing coming out of my cell is a stream of lead." Smile. I wish I had just one more chance at the punk who shot me. The dirty, Jew bastard.

The final letter, dated June 13, 1981, and which referred to an individual called Marlow, read:

The cocksucker had to give Roxann a fucked up gun to give me.

## I

Appellant argues that the trial court erred in admitting State's Exhibit Five, letters written by him to Evelyn Cline, on the grounds that the letters were obtained as a result of an illegal search and seizure, that a sufficient chain of custody was not established, and that the letters were prejudicial.

■ Appellant maintains that the letters were illegally seized without a warrant in violation of his Fourth Amendment right to be free from unreasonable search and seizure. The letters were given to Officer DeCanter of the Lake County Police Department by Judy Love, the mother of Evelyn Cline. There is no evidence that Ms. Love had been solicited to act as an agent for the police. The constitutional prohibitions against unreasonable searches and seizures provide protection from such acts by the government. The state and federal constitutional provisions do not apply to unauthorized acts of private citizens. *Torres v. State* (1982), Ind., 442 N.E.2d 1021; *Zupp v. State* (1972), 258 Ind. 625, 283 N.E.2d 540; *Gunter v. State* (1971), 257 Ind. 524, 275 N.E.2d 810; *Burdeau v. McDowell* (1921), 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048.

■ Appellant also maintains that the letters should not have been admitted into evidence because a sufficient chain of custody was not established. The purpose of establishing a chain of custody is to show a complete chain of possession from the original receiver to the final custodian and thus lay a proper foundation connecting the evidence in question with the accused. *Williams v. State* (1979), 270 Ind. 573, 387 N.E.2d 1317. An exhibit is admissible if the evidence regarding its chain of custody strongly suggests the exact whereabouts of the evidence at all times. *Holt v. State* (1980), 272 Ind. 544, 400 N.E.2d 130. However, non-fungible items do not require this high degree of scrutiny that must be applied to fungible items. *Wilson v. State* (1975), 263 Ind. 469, 333 N.E.2d 755. In addition, a non-fungible item may be admitted into evidence based upon testimony that the item is the one in question and is in a substantially unchanged position. *Woodard v. State* (1977), 267 Ind. 19, 366 N.E.2d 1160.

■ Here, the record reveals that Officer Decanter received the letters from Ms. Love on July 2, 1981. Subsequently, Officer DeCanter placed the letters in a file and stored them in the chief of detective's

locked filing cabinet. The letters remained in the custody of the Lake County Police Department until approximately two weeks prior to trial when the letters were transferred to the Prosecutor. Finally, at trial, DeCanter testified that the letters contained in State's Exhibit Five were the same letters that he had received from Ms. Love on July 2, 1981. A proper chain of custody was established.

■ Finally, appellant maintains that the trial court erred in admitting the letters into evidence because they were prejudicial. Evidence tending to prove a material fact is admissible. *Stowers v. State* (1977), 266 Ind. 403, 363 N.E.2d 978. Evidence which would otherwise be admissible may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury ... McCormick § 185, at 435; *United States v. Chapin* (D.C.Cir.1975) 515 F.2d 1274; *Kiefer v. State* (1958), 239 Ind. 103, 153 N.E.2d 899. A trial court is given wide latitude in weighing the probative value of evidence with respect to a material fact as against the possible prejudice of its admission in a criminal proceeding. *Pitman v. State* (1982), Ind., 436 N.E.2d 74.

■ Here, the edited letters were relevant and material on the element of intent. The obvious prejudicial impact of the letters is that they tend to incriminate the appellant and depict him as an obnoxious person. The scales are near equipoise; and as a result, we must defer to the trial court's ruling. Absent clear error in its determination, we will not say, as a matter of law that the trial court erred. *Dresser v. State* (1983), Ind., 454 N.E.2d 406. State Exhibit Five was properly admitted.

## II

Appellant argues that the trial court erred in admitting State's Exhibit Six. This exhibit consisted of several motions filed by him *pro se* in Lake Superior Court in cause number 2CR–300–992, a prosecution for armed robbery. The handwriting on the pleadings was to be compared to the letters in State's Exhibit Five to determine whether or not appellant had written the letters. Appellant contends that Exhibit Six was inadmissible since the trial court erroneously took judicial notice of the pleadings and since there allegedly was an insufficient foundation.

■ Appellant's first contention is correct. A trial court cannot, if asked, take judicial notice of its own records in a prior, separate case, even though the parties and the subject matter are related. Such record, however, can be a proper matter for evidence. *Smith v. State* (1983), Ind., 443 N.E.2d 1187.

■ Judicial notice excuses the party having the burden of establishing a fact from the necessity of producing formal proof. McCormick § 328 p. 757. Since the judge in this case erroneously relieved the State of its burden of producing the formal proof necessary to establish the foundation for admissibility, we must look to the entire record to determine whether there existed independent examples of formal proof sufficient to establish the foundation for admissibility. Here, the record shows that appellant's attorney admitted that appellant had written certain letters to the clerk. Also, the letters were filed with his other pro se pleadings, and the clerk file stamped them as a unit. Finally, the judge possessed first hand knowledge that the clerk had custody of the contents of Exhibit Six.

The foundation for Exhibit Six was sufficiently established; therefore, it was properly admitted into evidence.

## III

■ Appellant argues that the trial court erred in ordering him to give a handwriting exemplar. The purpose of the exemplar was to enable the expert to make a comparison between his handwriting and the letters in Exhibit Five. The right against self incrimination protects the accused only against testimonial compulsion. It does not protect against compulsory submission to purely physical tests such as fingerprinting, body measurements, hand-

writing and voice exemplars. *Frances v. State* (1974), 262 Ind. 353, 316 N.E.2d 364.

■■■■ Appellant also contends that it was error to order him to give the handwriting exemplar because the trial court already had a sample of his handwriting in State's Exhibit Six. It is within the trial court's discretion to order a handwriting exemplar whenever it determines that it will aid the handwriting expert in testifying. This is so even where there may be other samples of a defendant's handwriting available to the trial court.

## IV

■■■ Appellant argues that the trial court erred in denying his motion for directed verdict. Appellant offered evidence in his defense. The production of evidence by the defendant at trial following the denial of such a motion is deemed to waive any error in the ruling. *Vacendak v. State* (1982), Ind., 431 N.E.2d 100; *Miller v. State* (1981), 275 Ind. 454, 417 N.E.2d 339.

## V

■■■ Appellant argues that the evidence is insufficient to support his attempted murder conviction. The appellate court will not weigh the evidence nor judge the credibility of the witnesses. Rather, an appellate court considers only that evidence most favorable to the State and all reasonable inferences to be drawn therefrom which support the verdict. If there is substantial evidence of probative value which would permit a reasonable trier of fact to find the existence of each element of the offense beyond a reasonable doubt the judgment must be affirmed. *Reed v. State* (1979), 180 Ind.App. 5, 387 N.E.2d 82; see also *Henderson v. State* (1980), 273 Ind. 334, 403 N.E.2d 1088.

■■■ The evidence most favorable to the State proves that appellant aimed a loaded automatic pistol at a police officer and that he threatened to shoot the police officer if he reached for his gun. Subsequently, the pistol jerked twice but did not fire. The jerking of the pistol together with his later statement that the pistol had not been in order gives rise to the inference that appellant was squeezing the trigger. Consequently, reasonable jurors could find that appellant had taken a substantial step toward the commission of the offense of murder. The evidence was sufficient to support appellant's conviction for attempted murder.

## VI

At the sentencing hearing, the State, over appellant's objection, read an exerpt of a letter from State's Exhibit Five. The letter was dated April 7, 1981, and is in reference to Roxann Carr. The excerpt read as follows:

"She is the reason I am in here. I rob to support her's and my dope habits. Evelyn, I went through over $30,000 while I was with her. We robbed everything around Hammond and all Cal City."

■■■ Appellant argues that the trial court erred in allowing the State to read the letter because its contents mention possible prior criminal acts and because he was not notified that the trial court would consider it in sentencing. Ind.Code § 35–4.1–4–13 states:

Disclosure of contents of presentence report to convicted person. Before imposing sentence, the court shall:

(1) advise the convicted person or his counsel and the prosecuting attorney of the factual contents and conclusions of the presentence investigation; or

(2) provide the convicted person or his counsel and the prosecuting attorney with a copy of the presentence report. The sources of confidential information need not be disclosed. The court shall furnish the factual contents of the presentence investigation or a copy of the presentence report sufficiently in advance of sentencing so that the convicted person will be afforded a fair opportunity to controvert the material contained therein.

Here, however, the contested letter was not part of the pre-sentence report because it was introduced by the State at the sentenc-

ing hearing. In recommending a sentence, the prosecution may apprise the trial judge of the reasons for its recommendation and zealously advocate the imposition of such a sentence. *Spalding v. State* (1975), 165 Ind.App. 64, 330 N.E.2d 774. Furthermore, a trial court's discretion in considering a history of criminal activity is not limited. *Page v. State* (1982), Ind., 442 N.E.2d 977. Also, it is difficult to discern how the alleged lack of notice harmed appellant. He had written the letter, and he possessed peculiar knowledge of the circumstances contained in the letter; therefore, he was fully capable of refuting its contents had he chosen to do so. The trial court did not err in admitting the letter into evidence at the sentencing hearing.

## VII

Appellant argues that his sentence is not supported by adequate findings of aggravating or mitigating circumstances.

 In order to carry out our function of reviewing the trial court's exercise of discretion in sentencing, we must be told of its reasons for imposing the sentence. *Green v. State* (1981), Ind., 424 N.E.2d 1014. This statement of reasons must contain the following three elements: (1) It must identify all significant mitigating circumstances and aggravating circumstances; a failure to find either when clearly supported by the record may reasonably give rise to a belief that they were overlooked, hence not properly considered. See *Page v. State* (1981), Ind., 424 N.E.2d 1021. (2) It must include the specific reason why each circumstance is mitigating or aggravating. (3) The mitigating circumstances must be weighed against the aggravating circumstances in order to determine if the aggravating circumstances offset the mitigating circumstances. Some articulation of this balancing process must be made in the record by the trial judge. *Abercrombie v. State* (1981), 275 Ind. 407, 417 N.E.2d 316.

 Here, the trial court stated his reasons for imposing an aggravated sentence upon appellant as follows:

There are several aggravating factors present in this case. The defendant violated parole in the State of Kentucky, has a felony cause pending in Illinois. The defendant has a history of criminal activity, including convictions for armed robbery in Kentucky in 1973, first degree burglary in 1974 in Indiana. Has the conviction in another court in this building on the charge of robbery ...

Also, I find that the defendant is in need of correctional treatment, that can best be provided by a penal facility.

The defendant was released from the Lake County Jail to attend his stepfather's funeral and admittedly attempted to escape after that favor was granted to him by Judge Letsinger. And according to the verdict of the jury, also did the crime of attempted murder at that time. He has escaped from prison in the past in the State of Kentucky. I will also find that the imposition of a reduced sentence would depreciate the seriousness of the crime and this crime was attempted against a law enforcement officer in the line of duty. It is true that the defendant has been given a severe sentence down the hall, and this is something added to it. I think that is the only thing that I can think of in the defendant's favor, is that he has been sentenced for something else and something serious, recently, for something else and has thereby been punished, to a large extent, even before coming in here today. Accordingly, I will sentence the defendant to custody of the Department of Corrections for classification and confinement; recommend a maxium security facility for a period of 35 years on this charge.

The trial court's statement clearly indicates that he identified, explained and weighed the mitigating and aggravating circumstances in this case. Moreover, the trial court's reasons provided a sufficient basis for appellant's aggravated sentence.

## VIII

Appellant argues that the trial court erred in ordering that the sentence in the

present case be served consecutively with a sentence imposed in a prior case. The trial court's ruling, which is pursuant to Ind. Code § 35–50–1–2, is set forth here:

> Well, I read the law as saying that this sentence must be consecutive to the one handed down in Room 2, because the defendant was under arrest for the main charge pending in that court when this offense was committed, and I think that consecutive term is mandatory by law.

Appellant's contention that the trial court misinterpreted the statute is correct. Ind.Code § 35–50–1–2 reads as follows:

> (a) Except as provided in subsection (b) of this section, the court shall determine whether terms of imprisonment shall be served concurrently or consecutively.
>
> (b) If a person commits a crime:
> (1) After having been arrested for another crime; and
> (2) Before the date he is discharged from probation, parole, or a term of imprisonment imposed for that other crime:
> the terms of imprisonment for the crimes shall be served consecutively, regardless of the order in which the crimes are tried and sentences imposed.

 The Appellee concedes that our case law has clearly established that the mandatory section of this statute, section (b), only applies if a defendant is on probation, parole, or serving a term of imprisonment at the time the other offenses were committed. *Haggard v. State* (1983), Ind., 445 N.E.2d 969. Therefore, the mandatory statutory provision for imposing consecutive sentences is not applicable in this case.

However, section (a) gives the trial court the discretion to determine whether terms of imprisonment shall be served concurrently or consecutively when evidence of the facts of each offense is before the court as it was in this case. *Ferguson v. State* (1980), 273 INd. 468, 405 N.E.2d 902.

In this case, the record shows that the trial court considered the appropriate aggravating circumstances in increasing the presumptive sentence of thirty years for attempted murder to thirty five years. However, the trial court set out only one reason for imposing the present sentence to be served consecutively to the sentence received in Lake Superior Court, Room Two, Criminal Division: the mandatory provisions of Ind.Code § 35–50–1–2, supra. Since we have found that the mandatory provision is not applicable in this case we must remand the case for a specific and individualized statement of why the facts in this case support the imposition of consecutive terms. *Haggard v. State*, supra at 974.

The conviction is affirmed; cause is remanded for a new sentencing hearing consistent with this opinion.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ. concur.