STATE of Missouri, Respondent,

v.

Arthur L. NUNN, Appellant.

No. WD 37981.

Missouri Court of Appeals,
Western District.

Dec. 9, 1986.

Motion for Rehearing and/or Transfer
to Supreme Court Denied Feb. 3, 1987.

Joseph H. Locascio, Sp. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Carrie Francke, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P.J., and MANFORD and BERREY, JJ.

BERREY, Judge.

Arthur L. Nunn was convicted by a jury of first degree robbery and armed criminal action and sentenced to twenty (20) years and ten (10) years, respectively, the sen-

tences to run concurrently. From this conviction and sentence defendant has filed this appeal.

On March 2, 1986, the victim, George E. Howard, left his employment at Ford Motor Company at 3:30 a.m., and started home. He stopped at a 7–Eleven store for a paper and then proceeded to a car wash at 72nd and Prospect. He was in the process of washing his car when a short negro male with red hair and freckles, armed with a pistol, accosted him. Howard turned the water spray on the man and then threw it down and ran. As Howard approached the end of the car wash bay, a second negro male, the defendant in this case, also armed with a hand gun, stepped in front of him pointing the gun at him and said "I'm going to kill you." Howard testified the car wash had fluorescent lights on both ends and described the lighting as "real good." Howard testified that at this point he got a good look at the defendant. He was then forced to lie face down on the gravely, dirty, wet floor of the car wash while the defendant put his foot on his neck and a gun to his head. He was then searched, and his billfold, containing $150 cash and credit cards, was stolen. The entire incident, according to Howard, lasted only two or three minutes. He described the defendant as "dark skin, about 5′9″ or 5′11″, with dark clothes." Howard made a positive in-court identification of the defendant. Prior to that time he had picked defendant's picture from a photo array and then he picked defendant out of a lineup conducted by the Kansas City Police Department. Howard further testified, "I knew without no doubt it was the guy that robbed me."

The defendant alleges three points of trial court error on appeal: (1) that the court erred in not suppressing the voice identification of defendant by the victim; (2) failure to provide funds to produce an alibi witness from the state of Louisiana; and (3) sustaining state's objection to the following voir dire question: "How many people think sympathy they would feel for the the victim of a crime would influence their decision in a case?"

Initially, defendant was brought to trial on June 17, 1985, in which defendant was ordered, over his objection, to speak in open court before the jury and the victim, Howard, so that he (Howard) could attempt to identify defendant's voice. This trial eventually resulted in a mistrial on other grounds. At a suppression hearing before the start of the second trial (resulting in conviction from which defendant appeals), the prosecuting attorney stated he intended only to ask the victim whether he had heard the defendant's voice and if it was the same voice he heard on the night of the robbery. The court overruled defendant's objection to this evidence. The defendant contended the procedure used in the voice identification was unduly suggestive. At trial, on direct examination, when asked whether he had the chance to identify the defendant's voice, Howard responded in the affirmative. Defendant renewed his objection but again was overruled by the trial court.

█ The in-court identification was reliable and there was nothing to suggest that improper procedures were used by the police in securing the out-of-court identification. The trial court looks to the "totality of the circumstances" in determining the reliability of the identification such as the length of time to view the criminal at the time of the crime, the witness' degree of attention, accuracy of the victim's prior description, the degree of certainty when witness confronts defendant and the length of time between the crime and the confrontation. *State v. Robinson,* 641 S.W.2d 423, 427 (Mo. banc 1982).

The court in *State v. Leigh,* 580 S.W.2d 536, 543 (Mo.App.1979) stated:

In determining whether a pre-trial confrontation was so unduly suggestive as to warrant suppression of the in-court identification the following must be considered: (1) the presence of an independent basis of identification of the defendant, (2) the absence of any suggestive influence by others, and (3) positive courtroom identification. *State v. Rut-*

*ledge,* 524 S.W.2d 449, 456[4] (Mo.App. 1975); *State v. Dancy,* 541 S.W.2d 35, 37[1] (Mo.App.1976). If elements (1) and (3) of this three part test are satisfied, the identification testimony may be admitted. *State v. Holland,* 534 S.W.2d 590, 592[3] (Mo.App.1976).

The first and third factors are met, as Mr. Howard identified the defendant before a voice identification occurred and his in-court identification was absolute.

The defendant cites *Palmer v. Peyton,* 359 F.2d 199 (4th Cir.1966), as supportive of his position. It is not. Here the victim viewed the lineup and heard the defendant speak.

■ In the instant case the following transpired. Howard asked by the prosecutor:

Q. Go ahead and tell us how they came on and what you did as you were watching.

A. Well, they came on one at a time and I was basically watching their faces, the structure and everything. They came on one at a time and as they came by I took a good look at each one, and finally they was all out together and I began to notice without a doubt in my mind, you know, that this was the same guy that robbed me at the carwash.

Q. Okay. And did you get to see—you could see all of them, it wasn't just like his head in a photograph?

A. Full.

Q. And how were they dressed? Were they all dressed alike?

A. All dressed in the same uniform.

Q. What did you do after you recognized the second man that robbed you that night?

A. Well, when I looked at him I knew without no doubt in my mind it was the guy that robbed me.

Q. And what did you do? Did you tell the police officer, or sign something, or do you recall what you did?

A. Yes. I told them that this was the guy that robbed me that night.

On cross-examination the public defender asked Howard:

Q. But you're like on a floor and then the stage is a stage, it's raised?

A. It was elevated up a little bit.

Q. Okay. Now, you said that you immediately selected Arthur Nunn out of that group of four people.

A. They came out one at a time. When they were all out at one time I immediately recognized it was the same guy that robbed me when they all had came out.

Q. Okay.

A. But I recognized him as he stepped out then. When all of them was together there was no doubt in my mind that he was the guy that robbed me.

The victim had picked out the defendant's picture from a photo array, he had identified defendant in a lineup and had identified him in court. The additional voice identification was merely cumulative evidence. Defendant's point I is denied.

Defendant next complains that the state failed to make funds available to produce a witness from Louisiana. Kenneth Lewis, cousin of defendant, was in Kansas City on the date of the robbery. Lewis and Oscar Lee Nunn, III went out on the town; they visited at Oscar's brother Milton's house and then rode around arriving home at 1:30 a.m. Oscar testified that he and Kenny (Kenneth Lewis) went to sleep in the same bed in the basement of the family home and that when he went to bed he saw Arthur (defendant) asleep in another bed in the basement. Oscar further testified that he and Kenneth were awakened between 7:00 and 7:30 a.m. by his brother Curtis and that Curtis also awoke Arthur. Oscar, however, testified he was not awake at 4:10 to 4:15 a.m., the time of the crime. Oscar stated that at no time did he go to the police with his story. Oscar did not know whether Kenneth was in Louisiana or school in Wichita at the time of the trial.

There was some evidence presented at the hearing on the motion for witness transportation costs that the public defender's investigator took a statement from Lewis, wherein Lewis stated he fell asleep about 3:30 a.m. and that defendant was asleep at that time. Since the place of the robbery was in close proximity to defendant's residence at 6834 South Benton, this statement standing alone offers merely cumulative evidence of defendant's whereabouts up until 3:30 a.m. There is no alibi evidence presented to suggest defendant's whereabouts between 3:30 a.m. and 4:10 a.m.

■■■ The state is not constitutionally required to provide the indigent defendant with experts or witnesses. *State v. Holland,* 653 S.W.2d 670, 678 (Mo. banc 1983). Whether public funds should be provided to aid a defendant in preparing his defense is within the trial court's discretion. *State v. Gilmore,* 681 S.W.2d 934, 941 (Mo. banc 1984). Defendant's point II is denied.

■■■ Finally, defendant complains that he should have been permitted to inquire of the jury panel about their sympathies for a crime victim. Such examination is under the control of the trial court and the court has wide discretion regarding proprieties of questions propounded. Absent a showing of abuse by the trial court, such rulings will not be overturned on appeal. *State v. Smith,* 649 S.W.2d 417, 422 (Mo. banc 1983); *State v. Garrett,* 627 S.W.2d 635, 642 (Mo. banc 1982), *cert. denied,* 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982); *State v. Betts,* 642 S.W.2d 604 (Mo. banc 1982). No such showing is made herein by the defendant. Since the trial judge is in a better position to make a determination than an appeals court from the "cold record", doubts as to the trial court's findings will be resolved in its favor. *State v. Engleman,* 634 S.W.2d 466, 471–72 (Mo. 1982).

Further, the question would require the prospective jurors to speculate on what weight they might give certain testimony. Such speculation is improper. *State v. Williams,* 617 S.W.2d 98, 99 (Mo.App. 1981). Defendant's point III is denied.

Judgment affirmed.

All concur.