STATE of Missouri, Respondent,

v.

Eric MASSEY, Appellant.

No. WD 39860.

Missouri Court of Appeals,
Western District.

Nov. 15, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 27, 1988.

Application to Transfer Denied
Feb. 14, 1989.

John E. Cash, Kansas City, for appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, C.J., and MANFORD and BERREY, JJ.

BERREY, Judge.

Eric Massey appeals his convictions in a jury trial of forcible rape, section 566.030, RSMo 1986, and assault in the first degree, section 565.050, RSMo 1986, for which he was given consecutive sentences of life and fifteen (15) years respectively. Appellant alleges four points of error, specifically: (1) that the trial court erred in overruling his motion to dismiss Count II, assault in the first degree, because the charge was vindictively filed; (2) that the trial court erred in its failure to give a verdict possibilities instruction; (3) that the trial court erred in

allowing the prosecutor to inquire as to the outcome of prior criminal trials on which prospective jurors had served; and (4) that the trial court erred in admitting certain blood sample exhibits and testimony pertaining thereto as no proper identification or chain of custody was established.

On December 5, 1986, an indictment was filed, charging appellant, Eric Massey, with the forcible rape of O.S. Bond was set at $75,000. On March 20, 1987, Massey was released on bond. On March 24, 1987, a felony complaint was filed by assistant prosecutor Carol Barnett charging Massey with assault in the first degree. This assault charge was based upon the stabbing of O.S. during the same incident in which the rape occurred. The state requested consolidation of the charges, designating them as Count I and Count II. The case went to trial on July 8, 1987.

The evidence presented at the trial dealt with the rape and assault of O.S. on November 15, 1986. O.S. returned home after completing her shift at work at about 3:00 a.m. She removed her jacket, laying it and her purse on the divan in the front room. She then went into her bedroom to change into a nightgown and robe. She went back into the front room to count out her money and prepare a deposit slip for the next day. The billfold contained a telephone calling card, identification, money, a gold certificate and a silver certificate.

After O.S. had been at home for about ten or fifteen minutes, she heard someone at the door. She went to the door and saw a man who she later identified as the appellant, coming into her home. He pushed his way in, grabbed her by the arms and forced her into the bedroom, where he raped her. When she started to get up he told her to get back down. He then stabbed her about forty or fifty times with a screwdriver. He left the bedroom and went into the front room, where she saw him messing with something on the divan. He left and O.S. was able to dial 911.

The police and an ambulance arrived shortly thereafter. O.S. and the ambulance drivers were not able to find her jacket or her purse. She was taken to the hospital after giving the police a description of her assailant. Officer Larry Smith, who was dispatched to the scene of the crime, found a black jacket laying on the trunk of a car parked in the garage. O.S. stated that it was not her jacket. Officer Smith showed the jacket and a stocking cap found in the jacket pocket to Officer Ken Baker. Officer Baker had stopped Massey earlier that morning and Massey at that time was wearing a stocking cap and a black jacket.

Several police officers then went to Massey's apartment. He let them in. The victim's jacket and her telephone calling card were found in the apartment. Appellant was arrested and allowed to get dressed. O.S. identified Massey as her attacker when confronted with him at the hospital. Blood samples taken from appellant's pants and clothing were found to be the same type as the victim but of a different blood type than that of appellant.

A negroid pubic hair found in the victim's bedding was found to match a sample of pubic hair taken from appellant. A search of appellant's apartment, pursuant to a warrant, lead to the discovery of a gold certificate and a silver certificate.

Appellant's first point on appeal alleges that the trial court erred in overruling his motion to dismiss Count II, assault in the first degree, because the charge was filed vindictively by the prosecutor in response to appellant's exercise of his right to bail. Appellant's argument is unpersuasive.

Appellant made bond on March 20, 1987. On March 24, 1987, a felony information was filed by the assistant prosecuting attorney charging Massey with assault in the first degree. Additional bail in the amount of $35,000 was set by the court and because Massey was unable to make bail he was remanded to jail. Carol Barnett, the assistant prosecuting attorney, testified that the filing on the assault charge was not done solely in response to appellant's making bail. She testified, "It had also been made apparent to me that ... it did not appear there would be any possibility for plea negotiations any further down the road." She also received "additional lab

reports strengthening the state's case" in the middle of March. She did agree that the filing of the assault charge was at least in part a response to Massey's posting bond, as she believed him to be a threat to the community.

"To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *United States v. Goodwin*, 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed. 2d 74 (1982) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978)). Appellant alleges that this is what happened in the instant case, that because he exercised his right to bail he was punished by having an additional charge brought against him. This argument, however, shows that appellant labors under a misapprehension about the prosecutorial function and the nature of the doctrine of prosecutorial vindictiveness.

A prosecutor has broad discretion on the decision to prosecute and this decision is seldom subject to judicial review. *Wayte v. United States*, 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985). A distinction has been made between those cases involving alleged prosecutorial vindictiveness at a pretrial stage and those involving the defendant's exercise of a procedural right after once being tried and convicted. The need to be cautious before adopting an inflexible rule regarding the presumption of prosecutorial vindictiveness in a pretrial setting is pointed out. *United States v. Goodwin, supra,* 457 U.S. at 381, 102 S.Ct. at 2492. It is recognized that at the pretrial stage of the proceedings, "the prosecutor's assessment of the proper extent of prosecution may not have crystallized." *Id.* It has also been stated that the, "prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution." *Id.* at 382,' 102 S.Ct. at 2493.

Not all charges that can be filed against a defendant need be filed in the initial indictment. Prosecutors often hold some charges in abeyance, foreseeing their strategic use in plea negotiations. "For just as

a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded." *Id.* at 380, 102 S.Ct. at 2492. The filing of additional charges after the exercise of a statutory or constitutional right puts two rules of law into conflict. *State v. Cayson*, 747 S.W.2d 155, 157 (Mo.App.1987). These rules are the broad discretion accorded the prosecutor in filing charges and the prohibition against vindictive conduct by the prosecutor. *Id.*

The court in *Cayson* relied on the case of *United States v. Andrews*, 633 F.2d 449 (6th Cir.1980) (en banc), *cert. denied,* 450 U.S. 927, 101 S.Ct. 1382, 67 L.Ed.2d 358 (1981). Relying on *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the court in *Andrews* announced the test for prosecutorial vindictiveness as whether there is a realistic likelihood of vindictiveness in the prosecutor's augmentation of charges, given the factual situation presented. *United States v. Andrews, supra,* 633 F.2d at 453. To determine this, two factors are weighed: (1) the prosecutor's stake in deterring the exercise of some right; and (2) the prosecutor's conduct. *Id.* at 454. Once a realistic likelihood of vindictiveness is found then the burden is on the prosecutor to disprove such motivation, not by subjective good faith assertions but by objective on-the-record explanations. *Id.* at 456. Stated another way, the test then becomes "whether the state had reason to bring charges other than to punish defendant for exercising his constitutional rights." *State v.` Franks*, 702 S.W.2d 853, 855 (Mo.App. 1985). Application of the law to the facts in the current situation leads to the inescapable conclusion appellant's charge of prosecutorial vindictiveness is unfounded.

Appellant suggests that the prosecutor had a stake in preventing the accused from being free on bail, as this would hamper the preparation of the defense and provide more convenience for the prosecution in its access to the defendant. As a general proposition this is true for as far as it goes.

It is true for any defendant who cannot, for one reason or another, make bail. Here, the assistant prosecutor did not prevent bail from being set or appellant from bonding out. Nor did the filing of the additional charge guarantee that appellant would remain in custody. Bail was not denied him on the second offense, to the contrary, it was set at $35,000.

Appellant was initially under-charged. The charge of assault in the first degree was not filed by the prosecutor until after she determined that the case would have to be tried, that there were no possibilities of plea negations further down the road. The prosecutor also stated that she received additional lab reports in the middle of March which strengthened the state's case. She further testified that she believed appellant to be a threat to the community and quite frankly admitted that the assault charge was filed partly because appellant posted bond. It is clear, however, that this was not her sole reason for filing and, thus, appellant's allegations simply do not prove to be correct. As the assault charge was properly before the court, appellant's argument as to the propriety of the inclusion of certain evidence relevant to establish the assault need not be addressed. Appellant's Point I is denied.

Appellant next claims error in the trial court's failure to give a verdict possibilities instruction that was requested by the defense. Appellant submitted an instruction based upon MAI–CR 304.22, which was refused by the court. It read:

### INSTRUCTION NO. D

There has been submitted to you in Instruction No. 7 the offense of assault in the first degree. If you do not find the defendant guilty of assault in the first degree under Instruction No. _____, you must consider whether he is guilty of assault in the second degree.

There has been submitted to you in Instruction No. _____ the offense of assault in the second degree.

Instructions No. _____ and No. _____ submitting assault in the second degree are in the alternative. You may find the defendant guilty or not guilty of assault in the second degree under either instruction. You may find the defendant not guilty of assault in the second degree under both instructions. You may not find the defendant guilty of assault in the second degree under both instructions.

Each instruction and the evidence and law applicable to it must be considered separately.

The trial court gave instruction No. 5 which charged forcible rape, and instruction No. 7, assault in the first degree. Instruction No. 9 was given stating that instructions on forcible rape and assault in the first degree had been given and that, "[y]ou may find the defendant guilty or not guilty under either or both of the counts submitted in those instructions." Instruction No. 8 deals with assault in the second degree stating, "if you do not find the defendant guilty of assault in the first degree as submitted in Instruction No. 7 you must consider whether he is guilty of assault in the second degree."

Instruction D, submitted by the defense is clearly inapplicable to the case at bar because alternative instructions on second degree assault were not submitted. The Notes On Use applicable to MAI–CR3d 304.22 make it clear that, "[t]his instruction must be given when an offense is submitted as a greater offense and as a lesser included offense by two or more alternative instructions." See MAI–CR3d 304.22, Notes on Use 2.

Appellant's attempt to bootstrap his argument by borrowing language from another MAI–CR instruction is equally unpersuasive. Appellant quotes language from MAI–CR3d, 304.14, Notes on Use 6 as standing for the proposition that a not-in-MAI instruction should be drafted, apprising the jury of all possibilities. This note reads: "An unusual combination of multiple counts or submissions under one count and multiple defendants may require a verdict possibilities instruction not included in MAI–CR3d. In such an event, an appropriate instruction must be drafted." MAI–CR3d 304.14, Notes on Use 6. No such

instruction is suggested by the facts of the present case. Appellant's Point II is denied.

◼ Appellant's third point alleges that the trial court erred in permitting the prosecutor to inquire into the outcome of prior criminal trials on which prospective jurors had served, over the continuing objection of defense counsel. He claims that such inquiry was irrelevant to the selection of jurors and could have prejudiced prospective jurors in their perceptions of the efficiency of the prosecutor's office. Voir dire examination is under the control of the trial court, and that court has wide discretion over the nature and content of the questions which are asked. *State v. Nunn*, 724 S.W.2d 257 (Mo.App.1986). Only if an abuse of that discretion can be shown, will the trial court's ruling be overturned on appeal. *Id.* No such showing has been made in the instant case.

Appellant claims that the prejudice suffered was the creation of, "an impression in the minds of the other jurors that the county prosecutors were selective in the cases to the degree that most of those they prosecuted were guilty." Appellant's logic is stretched very thin here indeed and assumes that only guilty verdicts are reached in jury trials.[1] Inquiry into prior verdicts cannot be twisted so as to support this conclusion.

Appellant relies on *State v. Clark*, 509 S.W.2d 740 (Mo.App.1974), which upheld the trial court's refusal to allow inquiry by the defense into prior verdicts reached by veniremen. The court in *Clark* used the abuse of discretion standard to uphold the ruling, finding that the trial court did not act in an arbitrary or unreasonable manner. *Id.* at 742. This is a far cry from an outright prohibition on the subject of past verdicts. As no abuse has occurred in the instant case, appellant's Point III is denied.

Appellant's final point claims error in the trial court's admission of exhibits 41, 42,

43, 44, (blood samples from appellant and the victim) 47, 48, and 49, (pubic hair samples from appellant) and testimony thereto regarding comparisons with other samples, over the objection of the defense. Specifically, appellant complains that no proper chain of custody was established.

◼ "[T]he prevailing law in Missouri is that one must provide 'reasonable assurance' that the exhibit sought to be introduced is in the same and in like condition as when received." *State v. Dee*, 752 S.W.2d 942, 948 (Mo.App.1988) (quoting *State v. Fels*, 741 S.W.2d 855, 857 (Mo.App.1987)). It is not required that the state must account for the hand-to-hand custody of the exhibit under the reasonable assurance standard. *State v. Dee, supra*, 752 S.W.2d at 948. Furthermore, the state is not required to exclude every possibility that the evidence in question has been disturbed. *Id.* The chain of custody becomes irrelevant once a positive identification of the evidence has been made. *State v. Dudley*, 724 S.W.2d 517, 522 (Mo.App.1986).

Exhibits 41 and 42 were vials of blood taken from O.S. at the hospital. John Kreiser, a police detective and evidence technician for the City of St. Joseph, Missouri, testified that he was present when a nurse took the samples, after which they were handed directly to him. He identified the samples by his handwriting on them. Exhibits 43 and 44 were blood samples taken from Massey. Again, Detective Kreiser was present when they were drawn and identified these samples by his handwriting on them.

Exhibits 47, 48 and 49 were pubic hair samples taken from Massey. John Williams, a detective-sergeant employed by the St. Joseph Police Department, identified these exhibits. He testified that he collected pubic hair from Massey, placed them in separate envelopes, marked them, and turned them over to the evidence officer, Timothy Walden. Detective Williams

---

1. The record reveals that this reasoning is fallacious even in regard to the instant case. During voir dire prospective jurors related collectively ten instances in which they had served on criminal juries. In five of these cases, a guilty verdict was reached, in four of the cases a verdict of not guilty was reached, and in one instance, the defendant pled guilty during the course of the trial. These numbers do much to point out just how weak appellant's argument actually is.

identified these envelopes by the seal he had placed upon them. Thus, all the exhibits that appellant objects to were properly admitted by prevailing standards of Missouri law. *See State v. Dee, supra,* 752 S.W.2d at 948.

Appellant's argument, that somehow there was a break in the chain of custody because Officer Walden, who was responsible for transporting the samples to the regional crime lab, never established a present recollection of having done so and was allowed to read from the chain of custody sheet and the physical evidence custody report to assist his recollection, is irrelevant. A foundation had been laid for these documents, in any event. Because the exhibits in question were positively identified, appellant's Point IV is denied.

JUDGMENT AFFIRMED.