**STATE of Missouri, Plaintiff–Respondent,**

v.

**Allen D. POTTS, Defendant–Appellant.**

**No. 26531.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 23, 2005.

Motion for Rehearing or Transfer
Denied Dec. 15, 2005.

Application for Transfer Denied
Jan. 31, 2006.

---

William J. Swift, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora A. Fichter, Assistant Attorney General, Jefferson City, for respondent.

PHILLIP R. GARRISON, Judge.

A jury found Allen D. Potts ("Appellant") guilty of the class B felony of pos-

session of a controlled substance with the intent to distribute, Section 195.211[1], for which he was sentenced as a prior and persistent offender, to a term of fifteen years in the Missouri Department of Corrections. He appeals claiming, *inter alia,* that the prosecutor vindictively brought this charge in violation of his due process rights under the Missouri and United States Constitutions.

On September 5, 2002, Christen Shilling ("Shilling"), an investigator with the Southwest Missouri Drug Force dressed in civilian clothes, was going through some trash in a dumpster near the Aurora, Missouri Police Department searching for evidence of drug sales in connection with an unrelated case. Appellant and James Harvill ("Harvill"), traveling in Appellant's car, pulled up next to Shilling and Appellant asked her where "Timmy Yates" lived. After Shilling informed them where Yates' parents lived, Appellant asked if she used drugs to get "high." When Shilling said "yeah," Appellant offered to "get [her] high" if she sold drugs for him. After a moment Appellant changed his mind and offered to give Shilling drugs. Appellant then asked Shilling to leave with them. In order to arrange for back-up, Shilling said that she was completing community service and asked Appellant to come back in one hour. When Appellant returned one hour later, Shilling went into the police station on the pretense that she needed to "sign out" of the day's community service work. While inside she directed Officer Charlotte Malicoat ("Malicoat") to meet Appellant outside while she arranged for further back-up. Moments later, after witnessing a brief exchange between Appellant and Malicoat concerning Appellant's purpose for being at the police sta-

tion, Shilling identified herself as a police officer and asked both Appellant and Harvill to get out of the car.

Shilling searched Harvill for weapons and found small quantities of marijuana and what appeared to be methamphetamine. She then asked Harvill if anything else was in the car and he retrieved a black bag from underneath the passenger seat where he had been sitting. The bag contained two empty syringes, a glass pipe and a small piece of cotton. Shilling then searched the driver's side of the vehicle and found a syringe under the seat cover of the driver's seat containing eighty units of a clear liquid, which was later determined to be methamphetamine.

Appellant was arrested and charged as a prior and persistent offender with the class C felony of possession of a controlled substance as provided in Section 195.202. Trial began over one year later, on October 22, 2003. During voir dire one venireperson said she had seen Appellant around the county. The prosecutor then asked her if there was "[a]nything about seeing him around that would cause [her] to give more weight to his testimony than any other testimony?" Appellant objected to this reference to his possible testimony and moved the court for a mistrial, which the trial court granted.

Immediately thereafter the prosecutor informed the trial court of his intention to voluntarily dismiss the possession charge and re-file the case with the greater charge of possession of a controlled substance with the intent to distribute, a class B felony punishable by not less than ten and no more than thirty years or life in prison.[2] Appellant requested that the

---

1. All references to statutes are to RSMo (2000) unless otherwise indicated.

2. Although under Section 558.011.1(2) a class B felony carries a range of five to fifteen years in prison, in Appellant's case he was found to be a prior and persistent offender, which un-

prosecutor be barred from filing the greater charge, arguing that it would be a violation of due process because the prosecutor's action amounted to punishment for Appellant's exercise of his right to seek a mistrial based on the prosecutor's remark. The request was overruled by the trial court and the prosecutor subsequently filed a new compliant containing the enhanced charge. Prior to retrial, Appellant moved to dismiss the charge on the same due process grounds, but the trial court again overruled his motion.

On June 10–11, 2004, Appellant was tried before a jury and found guilty of possession of a controlled substance with the intent to distribute for which he was sentenced to a term of fifteen years as a prior and persistent offender. This appeal followed the overruling of his motion for a new trial.

Appellant relies on four points on this appeal. As we find Point I necessitates reversal we need not address Appellant's remaining issues. In Point I, Appellant alleges that the prosecutor acted vindictively when he raised the charge from possession of a controlled substance to possession with the intent to distribute after the trial court sustained Appellant's motion for a mistrial during voir dire. He also argues that the prosecutor deliberately induced the mistrial in order to file the greater charge and as a result double jeopardy bars further prosecution on either charge. We conclude that the first part of that contention requires reversal, but disagree with Appellant's second· argument.

■ When the State has probable cause to believe a crime has been committed, the "decision whether or not to prosecute and what charges to file generally rests entirely within the prosecutor's discretion." *State v. Patino,* 12 S.W.3d 733, 739 (Mo.App. S.D.1999). This decision is rarely subject to judicial review. *State v. Gardner,* 8 S.W.3d 66, 70 (Mo. banc 1999); *Patino,* 12 S.W.3d at 739. Not all charges that can be, must be filed in the initial indictment. *State v. Massey,* 763 S.W.2d 181, 183 (Mo.App. W.D.1988). Prosecutors can hold some charges in abeyance for strategic use. *Gardner,* 8 S.W.3d at 70; *Massey,* 763 S.W.2d at 183.

■ However, when such a decision comes after an accused has exercised a constitutional or statutory right, those principles conflict with the premise that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *see State v. Cayson,* 747 S.W.2d 155, 157 (Mo.App. W.D.1987). Appellant relies on *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), for the proposition that due process bars the State from retrying him on the higher charge.

In *Blackledge,* the defendant was convicted of misdemeanor assault in the District Court of Northampton County, North Carolina. 417 U.S. at 22, 94 S.Ct. 2098. After he exercised his statutory right to a *de novo* trial in the county's Superior Court, the prosecutor obtained a new indictment from a grand jury charging him with the greater offense of assault with a deadly weapon with the intent to kill, to which he plead guilty. *Id.* at 22–23, 94 S.Ct. 2098. The United States Supreme Court held that although there was no evidence that the prosecutor had acted in bad faith or maliciously, the imposition of a

der Section 558.016 raises the punishment to that of a class A felony under Section

558.011.1(1).

penalty upon a defendant for exercising a right of appeal violated due process because there was a realistic likelihood of vindictiveness. *Id.* at 28, 94 S.Ct. 2098.

■ The Due Process Clause is implicated when the State "up[s] the ante" by charging a defendant with a greater offense whenever a defendant pursues his statutory right to an appeal. *Id.; see also Cayson,* 747 S.W.2d at 157. *Blackledge* was grounded upon the proposition that because "fear of ... vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process ... requires that a defendant be freed of apprehension of such a retaliatory motivation" of the prosecutor. 417 U.S. at 28, 94 S.Ct. 2098.

In *U.S. v. Goodwin* the Court qualified that statement, explaining "that the due process violation lay ... not in the possibility that a defendant might be deterred from the exercise of a legal right ... but rather in the danger that the State might be retaliating against the accused for lawfully attacking his conviction." 457 U.S. 368, 378, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) (quoting *Bordenkircher,* 434 U.S. at 363, 98 S.Ct. 663). *Goodwin* also explained that in essence, *Blackledge* created a presumption of vindictiveness which arises in certain circumstances. 457 U.S. at 376, 102 S.Ct. 2485. The underlying rationale for the presumption being that:

> Motives are complex and difficult to prove. As a result in certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right, the Court has found it necessary to "presume" an improper vindictive motive.

*Id.* at 373, 102 S.Ct. 2485. However, because of the severity of this presumption, it is rarely invoked. *U.S. v. Campbell,* 410 F.3d 456, 462 (8th Cir.2005). These princi-

ples were applied in *State ex rel. Patterson v. Randall,* when the Supreme Court of Missouri used the presumption of vindictiveness to bar the State from seeking the death penalty against a defendant after he had been granted a new trial. 637 S.W.2d 16, 18 (Mo. banc 1982).

■ The presumption of vindictiveness only applies when there is a realistic likelihood of vindictiveness. *Id.* at 17–18; *see also Goodwin,* 457 U.S. at 373, 102 S.Ct. 2485. In Missouri, this likelihood is judged by weighing two factors: 1) the prosecutor's stake in deterring the exercise of the right being asserted, and 2) the prosecutor's actual conduct. *Gardner,* 8 S.W.3d at 70; *Massey,* 763 S.W.2d at 183; *Cayson,* 747 S.W.2d at 158; *see also U.S. v. Andrews,* 633 F.2d 449, 454 (6th Cir. 1980). When a realistic likelihood of vindictiveness is found the burden shifts to the State to rebut this "motivation, not by subjective good faith assertions but by objective on-the-record explanations." *Massey,* 763 S.W.2d at 183.

■ The State argues that *Goodwin* limited the application of the *Blackledge* presumption to those situations where "some evidence of actual vindictiveness calculated to influence the defendant's exercise of his due process right" can be shown. We disagree. Our reading of *Goodwin* leads us to the conclusion that a defendant may prove prosecutorial vindictiveness in one of two ways. *See Goodwin,* 457 U.S. at 380–381, 102 S.Ct. 2485; *U.S. v. Wood,* 36 F.3d 945, 946 (10th Cir.1994). First, if a realistic likelihood of vindictiveness is found, a presumption is erected in defendant's favor which the prosecutor must rebut. *See Goodwin,* 457 U.S. at 384, 102 S.Ct. 2485. This presumption may operate in the absence of any evidence of vindictive motive. *Id.* at 373, 102 S.Ct. 2485. Second, a defendant can make

a case for prosecutorial vindictiveness without the aid of the *Blackledge* presumption if he can prove, through objective evidence that the sole purpose of the State's action was to penalize him for exercising some right.[3] *See Goodwin*, 457 U.S. at 380 n. 12, 102 S.Ct. 2485; *Wood*, 36 F.3d at 946.

The State further contends that the *Blackledge* presumption is limited to those situations in which the State files more serious charges upon retrial following an appeal. We do not believe that *Blackledge* establishes such a bright line test. In *Cayson*, the western district of this court applied the principles of *Blackledge* and its progeny when the State filed a higher charge as well as additional charges after the defendant's motion for a new trial was sustained on the basis of instructional error. 747 S.W.2d at 157. There the prosecutor gave no explanation for why evidence tending to prove the elements of the enhanced charges was not presented at the first trial, nor was any given as to why the additional charge of first degree robbery was sought. *Id.* at 157. On appeal the court reversed, holding that the principles of *Blackledge* applied, that there was a realistic likelihood of vindictiveness and that the State failed to provide objective on-the-record evidence that the prosecutor

was not acting vindictively in filing the enhanced charges against the defendant. *Id.* at 158.

While we could find no Missouri cases deciding the precise issue presented in this case, other jurisdictions have applied the presumption to those situations in which a prosecutor enhances the charge following a defendant's successful motion for a mistrial. In *Murphy v. State*, 453 N.E.2d 219, 223 (Ind.1983), the Supreme Court of Indiana applied *Blackledge* to a prosecutor's attempt to retry a defendant with an additional charge following a mistrial due to prosecutor's employment of improper identification procedures.[4] *See also U.S. v. Jamison*, 505 F.2d 407, 416 (D.C.Cir.1974) (a defendant's right to "seek a premature end to unfair proceedings" is not significantly less important than a statutory right to appeal an unfair judgment).

We see no logical reason for a bright line test which would allow the presumption of vindictiveness to apply when a defendant asserts his right to a new trial, but not when he exercises his rights during trial. Furthermore, our concern for judicial efficiency weighs against the per se rule that the State advocates. Allowing the application of the presumption after reversals but not after mistrials could dis-

---

3. As was the case in *Goodwin*, 457 U.S. at 380–381, 102 S.Ct. 2485, and *Blackledge*, 417 U.S. at 28, 94 S.Ct. 2098, Appellant concedes that there is no evidence of actual vindictiveness in this case. "An example of objective evidence of a vindictive motive would be a prosecutor's statement that he or she is bringing a new charge in order to dissuade the defendant from exercising [his] legal rights." *Campbell*, 410 F.3d at 462; *see also Goodwin*, 457 U.S. at 380–381, 102 S.Ct. 2485. Because this is not present, a reversal is only warranted if the presumption of vindictiveness is applicable in this case. *See Goodwin*, 457 U.S. at 381, 102 S.Ct. 2485.

4. We note that Indiana operates under a stricter version of the doctrine of the presumption of vindictive prosecution than does Missouri. In Missouri, the prosecutor may rebut the presumption of vindictiveness when it applies. *Patterson*, 637 S.W.2d at 18–19. However, *Murphy* suggests that "fundamental fairness precludes ... the State be[ing] permitted to show [the] absence" of vindictive motive when the court finds a realistic likelihood of vindictiveness. 453 N.E.2d at 227. As a result the trial court did not consider whether the fact that the prosecutor was unable to file the habitual offender charge because he was without the evidence necessary to prove it before trial, was enough to rebut the presumption of vindictiveness. *Id.*

courage defendants from seeking mistrials when error prejudicial to them has occurred. *See Murphy,* 453 N.E.2d at 226.

This is not to say there are no limits to the application of the *Blackledge* presumption. The United States Supreme Court has declined to invoke it when a prosecutor filed a higher charge after the defendant refused to accept a plea bargain, because the "give and take" necessary in plea negotiations does not hold the same likelihood of vindictiveness as was the case in *Blackledge. Bordenkircher,* 434 U.S. at 364, 98 S.Ct. 663. It has also declined to apply the *Blackledge* presumption when a prosecutor increased the charges against the defendant after he refused to plead guilty and requested a jury trial. *Goodwin,* 457 U.S. at 382–383, 102 S.Ct. 2485. Missouri courts have consistently refused to apply the *Blackledge* presumption in the pretrial setting.[5] The *Goodwin* court cautioned against using the presumption in the pretrial setting:

> There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have fully crystallized.... Thus, a change in the charging decision

made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.

In addition, a defendant before trial is expected to invoke procedural rights that inevitably impose some "burden" on the prosecutor. Defense counsel routinely file pretrial motions to suppress evidence; to challenge the sufficiency and form of an indictment; to plead an affirmative defense; to request psychiatric services; to obtain access to government files; to be tried by jury. It is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and deter.

457 U.S. at 381, 102 S.Ct. 2485.

Based upon these principles the State argues that the presumption is not warranted in this case because the mistrial was granted in the early stages of the case, before the prosecutor's assessment of the case had fully materialized. However as will be seen, the prosecutor expressly stated that he knew that he could have charged Appellant with the intent to distribute, but he choose to proceed on the lesser charge. In any event, Appellant was not asserting a pretrial right in this case. Appellant was granted a mistrial as a result of the prosecutor's questioning during voir dire. The trial court sustained Appellant's motion for a mistrial after the prosecutor asked a venireperson how much weight she would give to defendant's testimony, allowing the jurors to draw unfavorable inferences should Appellant have cho-

---

5. *Gardner,* 8 S.W.3d at 70 (no presumption where defendant's refusal to waive statute of limitations defense regarding involuntary manslaughter charge resulted in a trial on the charge of second degree murder); *State v. Buchli,* 152 S.W.3d 289, 309 (Mo.App. W.D. 2004) (presumption did not apply to situation in which higher charges were filed after defendant had moved to suppress evidence, and to dismiss because of a violation of his right

to a speedy trial); *State v. Miller,* 981 S.W.2d 623, 629 (Mo.App. W.D.1998) (no presumption when prosecutor added a prior and persistent offender charge after the defendant refused a plea and asserted his right to trial); *State v. Molinett,* 876 S.W.2d 806, 808 (Mo. App. W.D.1994); *Massey,* 763 S.W.2d at 183 (the presumption does not apply when higher charges were added to the information after the defendant was released on bail).

sen not to testify, thereby violating his right to remain silent. *See State v. Graham,* 964 S.W.2d 836, 838 (Mo.App. S.D. 1998) (holding that the trial court erred in not declaring a mistrial when the prosecutor made reference during voir dire to the fact that the defendant did not have to testify at trial).

"[T]rial judges and lawyers commonly understand the beginning of trial to be that time when the selection of the jury begins." *State v. Cullen,* 646 S.W.2d 850, 854 (Mo.App. W.D.1982). There arises a point beyond which charges may normally be expected to be filed or amended. *See Murphy,* 453 N.E.2d at 224. While we should be vigilant in protecting the discretion that prosecutors enjoy in making pre-trial decisions to advance societal interests, "once a trial begins ... it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted." *Goodwin,* 457 U.S. at 381, 102 S.Ct. 2485; *see also Cayson,* 747 S.W.2d at 158. As will be seen, these principles are particularly apropos here.

 Having decided that the cases do not support a bright-line rule, we must determine whether under the circumstances of this case there is a realistic likelihood of vindictiveness which justifies the imposition of the *Blackledge* presumption. In doing so we consider the prosecutor's stake in deterring the exercise of the right being asserted, and the prosecutor's conduct, which is to be judged on a case by case basis. *Cayson,* 747 S.W.2d at 158. We also note that it has been said that the presumption of vindictiveness will not apply:

[i]f any objective event or combination of events in [the] proceedings should indicate to a reasonable minded defendant

that the prosecutor's decision to increase the severity of the charges was motivated by some purpose other than a vindictive desire to deter or punish appeals. *Wood,* 36 F.3d at 947; *see also U.S. v. Rodgers,* 18 F.3d 1425, 1430 (8th Cir.1994). We have searched the record in this case and have been unable to find any plausible, non-vindictive reason for the new charge that was filed.

The State has a stake in deterring defendants from seeking mistrials because it has expended resources on, among other things, preparing the case and securing the attendance of witnesses. In addition, prosecutors have a natural stake in deterring mistrials based upon defendants' motions because a significant amount of the time those motions are the result of error prejudicial to the defendant. *See Jamison,* 505 F.2d at 416 n. 15. For example, in this case had there been no mistrial, the State's case arguably would have been improved by the prosecutor's improper reference to Appellant's possible testimony.

The crux of this case, however, is the prosecutor's conduct. In response to Appellant's motion to prevent the greater charge from being filed, the prosecutor stated:

If [counsel] will recall my conversations with them prior to this thing going to trial and even after the last—this trial setting was set. I have made numerous comments to them that the [S]tate had thought about dismissing the case and refiling it as a more serious charge. We didn't do it after the preliminary hearing although I have had discussions with both counsel.... [T]his isn't done simply as a vindictive thing against this defendant. It is something we considered long before this thing went to trial. We decided to go ahead and take it to trial on the lesser charge today. He was facing 15 years, but that's the rea-

son why this is going to be refiled—it's not because of the mistrial. It assists us in being able to do that truly. But it is being refiled based on our conversations. And I know I had those at least with [counsel] on various occasion[s] during preliminary matters in this case. I make those statements as an officer of the court.

After signaling his intent to do so when the mistrial was granted, the prosecutor entered a *nolle prosequi* as to the original charge of possession, and re-filed the cause with the heightened charge of possession with intent to distribute on the same day. There is nothing in the record to suggest that the prosecutor was unaware of the facts necessary to bring the higher charge before the trial began. *See Cayson,* 747 S.W.2d at 158. To the contrary, the prosecutor stated that he was well aware that this higher charge was possible long before the first trial. This action, in the context of this case, permits no logical, non-vindictive explanation for this prosecutor's decision to re-file this case with a more serious charge on the same day Appellant was granted a mistrial. We find nothing to suggest that the prosecutor's purpose was anything other than to deter the defendant from, or punish him for exercising his rights at trial. *See Wood,* 36 F.3d at 947.

We stress that our holding is based upon the facts and circumstances of this case. We do not suggest that all cases in which a prosecutor brings higher charges after a defendant has successfully sought a mistrial justify applying a presumption of vindictiveness. "[T]he Due Process Clause is not offended by all possibilities of increased punishment . . . but only by those that pose a realistic likelihood of 'vindictiveness'" *Goodwin,* 457 U.S. at 384, 102 S.Ct. 2485 (quoting *Blackledge,* 417 U.S. at 27, 94 S.Ct. 2098). However, this case presents the rare circumstance in which the only rational explanation for the prosecutor's action is one of vindictiveness.[6] Therefore, we reluctantly conclude that there was a realistic likelihood that the prosecutor was acting vindictively and apply the presumption of vindictiveness that accompanies that conclusion.

Having found the presumption of vindictiveness is warranted we turn now to whether the State has overcome that presumption. The State reminds us that it has already made a record of its reasons for filing the higher charge and thus a new hearing on the matter is unnecessary. There is no definitive list of evidence which would rebut the presumption. At a minimum, the State must show objective, on-the-record evidence that it was not acting vindictively in substituting the higher charge.[7] *Massey,* 763 S.W.2d at 183.

---

6. There are numerous instances in which courts have found no realistic likelihood of vindictiveness. *See Woods v. State,* 775 S.W.2d 552, 555 (Mo.App. S.D.1989) (prosecutor's action followed a mistrial which resulted from a hung jury); *Molinett,* 876 S.W.2d at 808–809 (when prosecutor's action occurred in the context of plea bargaining and after the defendant requested discovery); *Massey,* 763 S.W.2d at 183–184 (prosecutor's action occurred after the defendant exercised his right to post bail).

7. Objective evidence could include, among other things: the unavailability of a Grand Jury at the time of the original filing, prosecutorial inexperience, the discovery of previously unknown evidence or legal impossibility. *Andrews,* 633 F.2d at 456; *see also Rodgers,* 18 F.3d at 1431 (although evidence was known to the police that would support the additional charge, the fact that the prosecutor was unaware of it would have over come the presumption even if it applied). Furthermore, complex cases may not come together completely until shortly before or after trial has begun as the prosecutor may obtain cor-

The record does not contain any objective evidence that there were other, non-vindictive reasons for the prosecutor's actions. The State asserts that there was no vindictive conduct by the prosecutor because all the information necessary to charge Appellant with the greater offense was at hand prior to the start of the trial. The State also relies heavily on the fact that the prosecutor informed both Appellant and the trial court that he could have brought the more serious charge prior to the start of the trial. The prosecutor claims that he did not file the more serious charge because he was already "set" for trial. The mistrial simply gave him the "opportunity" to charge the higher count.

This argument is undermined by the rhetorical question: why, if the prosecutor had at hand all the evidence necessary to support the enhanced charge all along, was the increased charge not filed until after the mistrial? We also note that five days before trial Appellant requested a continuance of the trial setting. That request was opposed by the State and denied by the trial court. If the reason the prosecutor did not file the enhanced charge was because the case was "set" for trial, conceding the motion for continuance would have provided an opportunity to file the charge the prosecutor says was warranted all along. By opposing the motion the prosecutor signaled that he was ready to proceed to trial on the charges that were then filed. The State simply has not pointed to an objective on-the-record explanation as to why the prosecutor did not file this charge prior to the start of the trial. *See Patterson,* 637 S.W.2d at 19. The State does not allege, nor does the record reveal, any evidence upon which the trial court could have found that the prosecutor had any motive other than one of vindictiveness for the exercise of Appellant's right to request a mistrial. Based on *Blackledge* and its progeny, we are compelled to grant this portion of Appellant's first point.

■ In Point I, Appellant also argues that the State is barred by double jeopardy from retrying him on the original charge, as well as the greater charge, citing *State v. Clover,* 924 S.W.2d 853 (Mo. banc 1996) (double jeopardy barred retrial after prosecutor intentionally attempted to bolster a weak case with inadmissible prior bad acts during his cross-examination of defendant). He also contends that the prosecutor intentionally caused the mistrial because he wanted to re-file the case with the higher charge. Appellant relies on *Downum v. U.S.,* 372 U.S. 734, 737, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), for the proposition that when a jury is dismissed because the prosecutor is unprepared to prove the charges filed against the defendant, double jeopardy bars that defendant's retrial on those charges. However, neither of these cases applies here because in both of them the prosecutor's conduct occurred *after* a jury had been selected. *Id.* at 736. In the instant case, however, the mistrial was granted *during* jury selection.

■ Double jeopardy attaches to a jury trial after a jury is empaneled and sworn. *Crist v. Bretz,* 437 U.S. 28, 35, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *State v. Smith,* 988 S.W.2d 71, 77–78 (Mo.App. W.D.1999); *State v. Tiger,* 972 S.W.2d 385, 388 (Mo.App. W.D.1998). The primary reason jeopardy is said to attach after the jury is selected is to "protect the interest of an accused in retaining a chosen jury." *Crist,* 437 U.S. at 35, 98 S.Ct. 2156. In

roborating evidence, turn coconspirators against one another, etc. *Rodgers,* 18 F.3d at 1431. These examples are not meant to be an

exhaustive list, however they are illustrative of the type of objective evidence necessary to overcome the presumption.

this case, Appellant was never in jeopardy on the original charge because the mistrial was granted during jury selection. As a result the prosecutor is not barred by double jeopardy from re-trying Appellant under the original charge of possession of a controlled substance.

Because the facts of this case present a realistic likelihood of vindictiveness we are required to apply the presumption of vindictiveness, and find that under the circumstances before us the State has failed to rebut this presumption with objective evidence. Therefore we reluctantly reverse the judgment of the trial court. The case is remanded to the trial court for further proceedings not inconsistent with this opinion.

SHRUM, P.J., and BARNEY, J., concur.